## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOSEPH C. AUSTIN                                    CIVIL ACTION

VERSUS                                             NO.  16-8059

JASON KENT, WARDEN                                 SECTION "E"(2)


## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the petitioner's Motion for Stay and Abeyance (Rec. Doc. No. 23) be **DENIED** and the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

I.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

The petitioner, Joseph C. Austin, is incarcerated in the Dixon Correctional

Institute in Jackson, Louisiana.[2]  On February 11, 2010, Austin was indicted by a St.

Charles Parish grand jury on nine counts of illegal possession of stolen goods and five

counts of simple burglary of an automobile.[3]  The Louisiana Fifth Circuit Court of

Appeal summarized the facts determined at trial as follows in relevant part:

> At approximately 2:30 a.m. on July 25, 2009, Deputy Daniel Bergeron of the St. Charles Parish Sheriff's Office responded to a report of a Lexus vehicle crashing in a parking lot of an apartment building on Lakewood Drive in Luling, Louisiana.  A witness informed the officer that she had seen two white males fleeing the vehicle.  The vehicle did not have a license plate on it, but had a temporary tag affixed to the rear window.  It was determined that the temporary tag had been stolen from a car dealership in Jefferson Parish.  A check of the vehicle identification number (VIN) revealed that it was registered to Cherie Suhor.
>
> Approximately two hours later, Deputy Bergeron responded to a report of a vehicle burglary on Willowdale Boulevard, where the victim informed the officer that a black Mizuno bag, among other things, had been taken from his vehicle.  Deputy Bergeron recalled that he had just seen a black Mizuno bag in the crashed vehicle he had investigated hours before.  Deputy Bergeron testified that the owner of the bag accompanied him back to the scene of the crash where he identified the bag as his own.
>
> David Boudry testified that his Toyota Corolla was burglarized on the evening of July 25, 2009, at his residence on Willowdale Boulevard in Luling. A pair of Nike shoes, trash bags, baseballs, and a Mizuno duffel bag were taken from the vehicle.  He stated that he did not authorize defendant or anyone else to enter his vehicle.
>
> Eric Berteau testified that his Toyota Tacoma was burglarized on the evening of July 25, 2009, at his residence on Lakewood Drive in Luling.  A laptop computer, an iPod and accessories, a book, and a pair of running shoes were taken from the vehicle.  He stated that he did not authorize defendant or anyone else to enter his vehicle.

---

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 10, Indictment, 2/11/10.

Jonathan Warren testified that his vehicle was burglarized on the evening of July 25, 2009, at his residence on Beaupre Drive in Luling. A book of CD's, a half carton of cigarettes, and a red flashlight were taken from the vehicle. He stated that he did not authorize defendant or anyone else to enter his vehicle.

Randy St. Blanc testified that his Toyota Sequoia was burglarized on the evening of July 25, 2009, at his residence on Beaupre Drive in Luling. A pair of sunglasses and a change holder were taken from the vehicle. He stated that he did not authorize defendant or anyone else to enter his vehicle.

Cherie Suhor testified that she had known defendant since they were children and that defendant lived with her from April 2009 to January 2010. In July 2009, Suhor lived in Metairie with her two sons, defendant, defendant's girlfriend, and defendant's baby. At the time, Suhor owned a Lexus, and she and defendant each had a set of keys for the vehicle.

Errol Falcon, Jr. testified that he was defendant's friend and had known him for 16 or 17 years. Falcon testified that on the morning of July 24, 2009, he met defendant at his residence, and they went to some stores. Defendant had to bring Suhor to work later that day, so Falcon brought defendant back home before he left for Biloxi, Mississippi. When Falcon arrived back in Louisiana later that night, defendant was at Falcon's house. Defendant told Falcon that he had committed several vehicle burglaries, that the police were after him, and that he had to ditch the Lexus in the Lakewood area. Defendant had to pick up Suhor from her job in Gramercy, and because he did not have a vehicle, Falcon drove defendant in his vehicle to pick her up.

Meanwhile, earlier in the evening, around 9:43 p.m., Suhor had called her boyfriend, Damien Schnyder. Thereafter, he came to her place of work. Later, in the early morning hours of July 25, 2009, when Suhor finished work, defendant and Falcon picked her and Schnyder up. According to Falcon, on the way back home, defendant plotted a course of action, and they decided to report the Lexus stolen.

At approximately 6:30 a.m., Suhor reported the Lexus stolen. The vehicle had been towed to the detective bureau and Detective Joseph Dewhirst contacted Suhor to identify the vehicle. Suhor positively identified the vehicle as her own and gave consent for the officers to search it. During the course of the search, the trunk was opened which revealed a license plate registered to Suhor and the Lexus. Additionally, a prescription pill bottle in defendant's name was recovered from the vehicle. Detective Dewhirst testified that once Suhor saw the stolen property in her vehicle, "she knew in her heart that it was Joey Austin that did the burglaries." At trial, when Suhor was shown several photographs of the interior of her vehicle, she stated that the items depicted in the photographs were not in her vehicle when defendant dropped her off at work on July 24, 2009.

State v. Austin, 113 So.3d 306, 309-11 (La. App. 5th Cir. 2013); State Record Volume 8 of 10, Louisiana Fifth Circuit Opinion, 12-KA-629, pages 3-5, March 13, 2013.

The State dismissed the nine counts of illegal possession of stolen goods before the first trial, which began on July 11, 2011.[4]  A mistrial was declared on July 12, 2011.[5]

The State dismissed Count 11 due to the absence of the victim.[6]  Austin proceeded to trial before a jury on July 25 through 27, 2011, and was found guilty as charged on the four remaining counts of simple burglary of an automobile.[7]

At a hearing on September 14, 2011, the state trial court denied Austin's motions for new trial and post-verdict judgment of acquittal.[8] The court also heard evidence related to the State's multiple bill.  After adjudicating Austin a second felony offender,

---

[4]St. Rec. Vol. 1 of 10, Trial Minutes, 7/11/11.

[5]St. Rec. Vol. 1 of 10, Trial Minutes, 7/11/11; Trial Minutes, 7/12/11; St. Rec. Vol. 2 of 10, Trial Transcript, 7/11/11; St. Rec. Vol. 3 of 10, Trial Transcript (continued), 7/11/11; St. Rec. Vol. 4 of 10, Trial Transcript (continued), 7/11/11; Trial Transcript, 7/12/11.

[6]St. Rec. Vol. 1 of 10, Trial Minutes, 7/26/11; St. Rec. Vol. 5 of 10, Trial Transcript, p. 721, 7/26/11.

[7]St. Rec. Vol. 1 of 10, Trial Minutes, 7/25/11; Trial Minutes, 7/26/11; Trial Minutes, 7/27/11; St. Rec. Vol. 4 of 10, Trial Transcript, 7/25/11; St. Rec. Vol. 5 of 6, Trial Transcript (continued), 7/25/11; Trial Transcript, 7/26/11; St. Rec. Vol. 6 of 10, Trial Transcript (continued), 7/26/11; Trial Transcript, 7/27/11.

[8]St. Rec. Vol. 1 of 10, Sentencing Minutes, 9/14/11; Motion for New Trial, 8/4/11; Motion for Post-Verdict Judgment of Acquittal, 8/4/11; St. Rec. Vol. 6 of 10, Sentencing Transcript, pp. 1061-62, 9/14/11.

the court sentenced him to consecutive six year prison terms on each count.[9]  The court also denied his motion to reconsider the sentence.[10]

On direct appeal, Austin's appointed counsel asserted three errors:[11] (1) The evidence was insufficient to support the verdict and denial of the motion for post-verdict judgment of acquittal was error. (2) Denial of the motion to quash the indictment on grounds of double jeopardy was error. (3) The state trial court imposed an excessive sentence.  In his pro se supplemental brief,  Austin asserted two additional errors:[12] (1) The state trial court erred in allowing the State to admit unauthenticated and uncertified telephone records. (2) The state trial court erred by denying the motion to suppress Austin's statements.

On March 13, 2013, the Louisiana Fifth Circuit affirmed Austin's conviction and sentence, finding all claims meritless.[13]  The Louisiana Supreme Court denied Austin's related writ application without stated reasons on October 25, 2013.[14]  His conviction became final ninety (90) days later on January 23, 2014, when he did not file a writ

---

[9]St. Rec. Vol. 1 of 10, Multiple Bill, 8/25/11; Sentencing Minutes, 9/14/11; St. Rec. Vol. 6 of 10, Sentencing Transcript, pp. 1083, 1085, 9/14/11.

[10]St. Rec. Vol. 2 of 10, Motion to Reconsider Sentence, 9/14/11; Trial Court Order, 9/14/11.

[11]St. Rec. Vol. 8 of 10, Appeal Brief, 12-KA-629, 9/17/12.

[12]St. Rec. Vol. 8 of 10, Pro Se Appeal Brief, 12-KA-629, 10/29/12.

[13]Austin, 113 So.3d at 306; St. Rec. Vol. 8 of 10, 5th Cir. Opinion, 12-KA-629, 3/13/13.

[14]State v. Austin, 124 So.3d 1092 (La. 2013); St. Rec. Vol. 9 of 10, La. S. Ct. Order, 2013-KO-0673, 10/25/13; La. S. Ct. Writ Application, 13-KO-673, 3/27/13 (dated 3/20/13); St. Rec. Vol. 7 of 10, La. S. Ct. Letter, 2013-KO-673, 3/27/13.

application with the United States Supreme Court. <u>Ott v. Johnson</u>, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), <u>cert. denied</u>, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

On April 2, 2014, Austin signed and submitted to the state trial court an application for post-conviction relief in which he asserted seven grounds, to which he later added supplemental arguments:[15] (1) He was denied effective assistance of counsel when the trial court denied a continuance to prepare for trial. (2) Newly discovered evidence, much like <u>Brady</u> evidence, was not accessible before trial to be used for impeachment. (3) The State withheld <u>Brady</u> evidence. (4) He was denied effective assistance of counsel when counsel failed to (a) adequately investigate and impeach Errol Falcon Jr., (b) impeach Cherie Suhor and prevent Detective Joseph Dewhirst from testifying as to the hearsay opinion of Cherie Suhor, (c) subpoena defense witnesses, (d) obtain complete phone records for Errol Falcon Jr. between July 7 and 24, 2011, (e) move for mistrial after opening the door for Deputy Giovanni Tarullo to mention a fingerprint found not inadmissible at trial, (f) protect his right to confront Celeste Geiger and avoid presenting prejudicial evidence to the jury, (g) object to prejudicial remarks by the prosecution during closing argument, (h) discuss the presentence report with

---

[15] St. Rec. Vol. 7 of 10, Application for Post-Conviction Relief, 4/14/14 (cover letter dated 4/2/14); Supplemental Brief, 4/14/14.

petitioner, recommend concurrent sentences and object to consecutive sentences and (i) obtain the cell phone records for Errol Falcon Jr. between July 24 and 25, 2009. (5) His conviction was obtained through prosecutorial misconduct in that (a) the State knew that Falcon tried to arrange for his girlfriend to perform sexual favors in return for a plea deal and failed to disclose this to the defense, (b) the State knowingly gave the state trial court fraudulent information, gave Falcon false immunity and allowed Falcon to testify falsely without correcting it, and (c) the prosecutor targeted Austin for exercising his right to remain silent. (6) The conviction was obtained without exclusion of every reasonable hypothesis of innocence. (7) He was denied his right to consult counsel during his questioning by deputies on January 8, 2010.

After receiving additional briefing,[16] the state trial court denied the post-conviction application on September 18, 2014, finding no merit in the first five issues and that the sixth and seventh claims were impermissibly repetitive under La. Code Crim. P. art. 930.4, because they had been fully addressed on direct appeal.[17]

Austin sought review in the Louisiana Fifth Circuit from the denial of relief as to the first five post-conviction claims.[18] The court denied his writ application, finding no

---

[16]St. Rec. Vol. 7 of 10, State's Response, 8/29/14; Traverse from Austin, 9/5/14.

[17]St. Rec. Vol. 7 of 10, Trial Court Order, filed 9/19/14.

[18]St. Rec. Vol. 8 of 10, 5th Cir. Writ Application, 14-KH-785, 10/10/14 (dated 10/7/14).

error in the state trial court's ruling.[19]  On March 24, 2016, the Louisiana Supreme Court

denied Austin's related writ application as meritless under the standards of <u>Strickland v.</u>

<u>Washington</u>, 466 U.S. 668 (1984), and <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and

referencing by attachment the reasons given by the state trial court.[20]

    While the latter writ application was pending, on November 9, 2015, Austin

moved the state trial court to make his sentences concurrent and coterminous, and the

court denied that motion on November 18, 2015, finding the motion untimely.[21]  The

record does not reflect that Austin sought review of that ruling.

## II.    FEDERAL HABEAS PETITION

    On July 1, 2016, after correction of certain deficiencies, the clerk of this court filed

Austin's federal habeas corpus petition in which he asserts the following grounds for

relief:[22]  (1) The evidence was insufficient to support the verdict and denial of his motion

for post-verdict judgment of acquittal was error. (2) Denial of the motion to quash the

indictment on grounds of double jeopardy was error. (3) The state trial court imposed an

excessive sentence. (4) The state trial court erred in allowing the State to admit

---

[19]St. Rec. Vol. 8 of 10, 5th Cir. Order, 14-KH-785, 12/15/14.

[20]<u>State ex rel. Austin v. State</u>, 187 So.3d 980 (La. 2016); St. Rec., Vol. 9 of 10, La. S. Ct. Order, 2015-KH-0031, 3/24/16; La. S. Ct. Writ Application, 15-KH-0031, 1/6/15 (dated 12/30/14); Motion for Stay, 15-KH-31, 5/27/15; St. Rec. Vol. 7 of 10, La. S. Ct. Letter, 2015-KH-31, 1/6/15.

[21]St. Rec. Vol. 8 of 10, Trial Court Order, 11/18/15; St. Rec. Vol. 7 of 10, Motion for Concurrent and Coterminous Judgments, 11/16/15 (dated 11/9/15).

[22]Rec. Doc. No. 3.

unauthenticated and uncertified telephone records. (5) The state trial court erred by denying the motion to suppress Austin's statements. (6) He was denied effective assistance of counsel when the trial court denied a continuance to prepare. (7) Newly discovered evidence, much like <u>Brady</u> evidence, was not accessible prior to trial to be used for impeachment. (8) The State withheld <u>Brady</u> evidence. (9) He was denied effective assistance of counsel when counsel failed to (a) adequately investigate and impeach Errol Falcon Jr., (b) impeach Cherie Suhor and prevent Detective Joseph Dewhirst from testifying as to the hearsay opinion of Cherie Suhor, (c) subpoena defense witnesses, (d) obtain complete phone records for Errol Falcon Jr. between July 7 and 24, 2011, (e) move for mistrial after opening the door for Deputy Giovanni Tarullo to mention a fingerprint found inadmissible at trial, (f) protect his right to confront Celeste Geiger and avoid presenting prejudicial evidence to the jury, (g) object to prejudicial remarks by the prosecution during closing argument, (h) discuss the presentence report with petitioner, recommend concurrent sentences and object to consecutive sentences and (i) obtain the cell phone records for Errol Falcon Jr. between July 24 and 25, 2009. (10) Prosecutorial misconduct occurred in that (a) the State knew that Falcon tried to arrange for his girlfriend to perform sexual favors in return for a plea deal and failed to disclose this to the defense, (b) the State knowingly gave the state trial court fraudulent information, gave Falcon false immunity and allowed Falcon to testify falsely without

correcting it and (c) the prosecutor targeted Austin for exercising his right to remain silent.

The State filed a response in opposition to Austin's petition asserting that he did not fully exhaust (and therefore defaulted) state court review of claim numbers six through ten as required under La. Code Crim. P. art. 930.4(C), because these claims should have been asserted on direct appeal and were not.[23]  The State further contends that the remaining claims, which were asserted on direct appeal, are without merit.

III.     MOTION TO STAY THE PETITION (REC. DOC. NO. 23)

On February 13, 2017, Austin filed a motion to stay the instant proceedings because he is in possession of new evidence; i.e., two letters from Errol Falcon Jr. recanting or showing conflict with some of Falcon's trial testimony and an affidavit from his sister, Kristen Austin, setting forth exculpatory statements made to her by Falcon.[24] Upon receipt of the motion, I provided the State with an opportunity to file a response, but it has not done so.[25]

Austin contends that he has attempted unsuccessfully to use Falcon's letters and revelations as a basis to have the state trial judge recused and to support a recently filed state application for post-conviction relief.  He seeks a stay of these federal proceedings

---

[23]Rec. Doc. No. 13.

[24]Rec. Doc. No. 23.

[25]Rec. Doc. No. 24.

to allow him to exhaust state court review of the denial of his second application for post-conviction relief.

The attachments to the motion provided by Austin include two letters purportedly written by Errol Falcon Jr. and addressed to Austin. The first letter, dated August 17, 2015, rehashes Falcon's involvement in the federal criminal case against the former St. Charles Parish district attorney related to the exchange of sexual favors and outlines criminal investigations against Falcon's family in retaliation for his involvement in that federal case. Falcon also noted that he and Austin took responsibility for the crimes they committed. In the second letter, dated February 24, 2016, Falcon told Austin he would see about retrieving any documents his attorney gave him during the burglary.[26] He also offered to testify on Austin's behalf in what appeared to be parental rights/custody case related to Austin's daughter. He also informed Austin of his efforts to have Austin's sister placed on his visitor list.

The exhibits also contain an affidavit date January 4, 2017, in which Kristen Austin attests that Errol Falcon Jr. apologized to her for testifying at trial that Austin had confessed to him that he committed the burglaries and told her that Austin should have taken the plea deal Falcon worked out for him.[27]

_____

[26]Rec. Doc. No. 23-1, pp. 58-59, 68-69.

[27]Rec. Doc. No. 23-1, p. 63.

Austin also provided a copy of a motion filed on January 13, 2017, to recuse the state trial court judge who had previously served as the prosecutor of Errol Falcon Jr. in 1995.[28] The attachments also reflect that Austin simultaneously submitted an application for post-conviction relief to the state trial court arguing that he was denied due process because of the State's reliance on and the untruthfulness of Falcon's trial testimony against him, all of which was tied to the alleged scheme to have Falcon's girlfriend provide sexual favors to the district attorney, Falcon's desire to secure a better sentencing deal for himself and Falcon's requests for return of some of the property seized by police.[29]

On January 23, 2017, the state court denied the motion to recuse and by separate order denied the post-conviction application, finding that review was barred under La. Code Crim. P. art. 930.4, because the sufficiency of the evidence against Austin was fully litigated on direct appeal.[30]  Austin asserts that he has brought or intends to seek review of those rulings in the higher state courts and requests that this court stay his federal habeas proceedings until that is accomplished.

"Section 2254(b) requires that prisoners must ordinarily exhaust state court remedies before filing for federal habeas relief."  Cullen v. Pinholster, 563 U.S. 170, 182

---

[28]Rec. Doc. No. 23-1, pp. 2-4.

[29]Rec. Doc. No. 23-1, pp. 7-28.

[30]Rec. Doc. No. 23-1, pp. 6 & 74.

(2011); <u>Whitehead v. Johnson</u>, 157 F.3d 384, 387 (5th Cir. 1998) ("A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief.") (citing <u>Rose v. Lundy</u>, 455 U.S. 509, 519-20 (1982)); <u>Nobles v. Johnson</u>, 127 F.3d 409, 419 (5th Cir. 1997).  The Supreme Court has consistently interpreted Section 2254 to require a federal habeas petitioner to complete exhaustion <u>before</u> seeking federal relief in order to promote "'comity, finality, and federalism,' by giving state courts 'the first opportunity to review [the] claim,' and to 'correct' any 'constitutional violation in the first instance.'" (citations omitted) <u>Carey v. Saffold</u>, 536 U.S. 214, 220 (2002) (quoting <u>Williams v. Taylor</u>, 529 U.S. 420, 436 (2000) and <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 844-845 (1999)); <u>Cullen</u>, 563 U.S. at 185; <u>Jiminez v. Quarterman</u>, 555 U.S. 113, 121 (2009).  For this reason, the Supreme Court also provides that petitions containing unexhausted claims and mixed petitions containing both exhausted and unexhausted claims be dismissed to require complete exhaustion.  <u>Pliler v. Ford</u>, 542 U.S. 225, 233 (2004); <u>Whitehead</u>, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); <u>Rose</u>, 455 U.S. at 519-20).

In <u>Pliler</u>, the Supreme Court addressed the availability of a stay-and-abeyance in connection with "mixed petitions" containing both exhausted and unexhausted claims. <u>Id.</u>, 542 U.S. at 227.  The <u>Pliler</u> Court ultimately reiterated the long-standing directive that a mixed petition be dismissed without prejudice to require exhaustion.  <u>Id.</u> at 233. The Supreme Court recognized that a petitioner has two choices when faced with

dismissal of a mixed petition: (1) return to the state courts to exhaust his claims in full; or (2) amend or resubmit his petition to raise only exhausted claims in the federal district court.  Id.

The Supreme Court later held that stay-and-abeyance was an extraordinary remedy not to be made readily available to a habeas petitioner.  Rhines v. Weber, 544 U.S. 269, 278 (2005).  The Rhines Court cautioned that a stay-and-abeyance "should be available only in limited circumstances," and is appropriate only when the district court determines that there was "good cause" for the failure to exhaust.  Id. at 277 (emphasis added).

Stays are improper when the unexhausted claims are "plainly meritless" or where the petitioner has engaged in "abusive litigation tactics or intentional delay."  Id.  Stays similarly are futile when the federal court finds that "the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred."  Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991); see, Neville v. Dretke, 423 F.3d 474, 479-480 (5th Cir. 2005) (holding unexhausted claims ineligible for stay when state court would find them to be procedurally barred).

In the instant case, Austin has not presented a "mixed petition."  Instead, he has exhausted all of the claims asserted in this federal petition.  This fact alone excepts his circumstances from the type of limited case for which a stay and abeyance was intended as described in Rhine.

14

In addition, Austin has not established that he is pursuing a claim with merit. Instead, it appears that Austin merely seeks to present purported new evidence in the form of his sister's affidavit and the letters from Falcon to bolster his old arguments that Falcon's testimony was insufficient to prove his guilt and that he is actually innocent. Austin offers nothing to establish merit in his reconstituted arguments. There is no affidavit or statement by Falcon to recant his testimony. Instead, the letters purportedly sent to Austin by Falcon simply convey Falcon's empathy for Austin's plight and offer assistance in Austin's efforts to attain early release. The letters are not a confession of lies or recantation as Austin contends. Only the hearsay-riddled affidavit of Austin's sister asserts that Falcon apologized to her for having lied on the stand. This is not evidence sufficient to warrant a stay of these proceedings to permit Austin to exhaust a challenge to the veracity of Falcon's testimony.

Even if Austin pursues state court review of this "new" evidence, he has not presented a basis for the grant of a stay in this federal court. As an initial matter, the United States Supreme Court has not recognized any free-standing actual innocence claim to support habeas relief. McQuiggin v. Perkins, __ U.S. __, 133 S. Ct. 1924, 1931 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)). The Court instead has recognized that a credible showing of actual innocence may act only as a gateway to overcome a procedurally defaulted or untimely filed federal habeas corpus claim and allow for review of the merits. McQuiggin, 133 S. Ct. at 1931; see, Schlup v. Delo, 513

U.S. 298, 314-15 (1995) (distinguishing the novel constitutional claim based on actual innocence asserted in Herrera from a claim of actual innocence that can, in a "narrow class of cases," excuse procedural default).  Austin has no basis to assert an actual innocence claim at this time since none of his pending federal claims are in procedural default and the instant petition was timely filed.

In addition, a stay is not warranted based on Austin's repackaged challenge to the sufficiency of the evidence against him.  As Austin readily notes in his motion for a stay, the state trial court barred review of his renewed claim, finding it repetitive of matters fully addressed on direct appeal.  The issues asserted in Austin's state direct appeal already are before this court and require no further exhaustion.  The state courts also have grounds to bar review of his "new" evidence and arguments under the State's statute of limitations for post-conviction review under La. Code Crim. P. art. 930.8 and the bar to successive post-conviction applications under La. Code Crim. P. art. 930.4.  Thus, in addition to the bar already imposed by the state trial court, the Louisiana Fifth Circuit and the Louisiana Supreme Court "would now find the claims procedurally barred" on multiple grounds, and this is sufficient to prohibit the grant of a stay.  Coleman, 501 U.S. at 735 n.1; Neville, 423 F.3d at 479-480.

Under these circumstances, I find no good cause to stay Austin's federal habeas proceedings.  There is no reason to delay consideration of the claims asserted in Austin's petition, and the motion to stay should be denied.

IV.    GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[31] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Austin's petition, which, for reasons discussed below, is deemed filed in federal court on May 19, 2016.[32] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b), (c)).

---

[31]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[32]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of this court initially received and filed Austin's deficient petition on May 25, 2016, and docketed on July 1, 2016, after correction of certain deficiencies. The case ultimately was opened on July 28, 2016, when the clerk received the filing fee from Austin after denial of pauper status. Nevertheless, Austin dated the signature on his original petition on May 19, 2016, which is the earliest date appearing in the record on which he could have submitted his pleadings to prison officials for mailing to a federal court. The fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

The State does not specifically address timeliness, but I nevertheless find that Austin's federal petition was timely filed. The State contends in its exhaustion/procedural default argument that Austin failed to exhaust state court remedies as to claims six through ten because he should have asserted them on direct appeal and failed to do so, as required by La. Code Crim. P. art. 930.4(C). I find, however, that the state courts denied relief after addressing the <u>merits</u> of each of these claims on grounds of federal and substantive state law with <u>no</u> reference to any procedural grounds for the denial that might give rise to a procedural bar to this federal court's review.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment. <u>Coleman</u>, 501 U.S. at 731-32; <u>Glover v. Cain</u>, 128 F.3d 900, 902 (5th Cir. 1997); <u>Amos v. Scott</u>, 61 F.3d 333, 338 (5th Cir. 1995) (citing <u>Harris v. Reed</u>, 489 U.S. 255, 260, 262 (1989)). In Austin's case, the Louisiana Supreme Court in the last reasoned state court opinion clearly denied post-conviction relief on the same five claims, which are now presented here as claims six through ten, finding that Austin failed to prove his claims, citing <u>Strickland</u> and <u>Brady</u> and specifically referencing and attaching the more thoroughly reasoned opinion of the state trial court, which also denied relief on the merits of each of these issues. <u>No</u> state court invoked or cited a state procedural bar to review of these claims. The United States Supreme Court has stated, "[w]hen a federal claim has been

presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Harrington v. Richter, 562 U.S. 86, 98 (2011). The state courts cited no state law principle in Austin's case indicating that denial of relief on these issues was based on procedural grounds or La. Code Crim. P. art. 930.4(C). See Woodfox v. Cain, 609 F.3d 774, 796 (5th Cir. 2010). The State's procedural default argument therefore is not applicable in this case and cannot be accepted. Accordingly, this report addresses the merits of Austin's claims.

V.    STANDARDS OF A MERITS REVIEW

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'" <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485. The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams v. Taylor</u>, 529 U.S. 362, 405-06, 412-13 (2000); <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Hill</u>, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." (citation omitted) <u>White v. Woodall</u>, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing <u>Harrington</u>, 562 U.S. at 103), and <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 122 (2009)). "Thus, 'if a habeas court must extend a rationale before it can apply to the

facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" <u>White</u>, 134 S. Ct. at 1706 (quoting <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 666 (2004)).

"'A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert. denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

## VI.   <u>SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 1)</u>

Austin asserts that the State's case against him was based on circumstantial evidence and the State failed to exclude every reasonable hypothesis of innocence.  He argues that the trial court erred in denying the motion for post-verdict judgment of acquittal based on the insufficient evidence.

Austin's appointed counsel urged these arguments on direct appeal to the Louisiana Fifth Circuit. The court found no merit in the claim under <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979), and related state case law, and no error in denial of the motion for post-verdict judgment of acquittal. This was the last reasoned state court opinion on the issue.[33]

Austin's claim that the state trial court improperly denied his motion for post-verdict judgment of acquittal does not warrant federal habeas corpus relief. A state court's denial of that type of post-trial motion does not violate a federal constitutional right. <u>Haygood v. Quarterman</u>, 239 F. App'x 39, 42 (5th Cir. 2007) (citing <u>Dickerson v. Guste</u>, 932 F.2d 1142, 1145 (5th Cir. 1991)). In addition, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." <u>Wilkerson v. Whitley</u>, 16 F.3d 64, 67 (5th Cir.1994) (citation and quotation omitted); <u>see</u> <u>Swarthout v. Cooke</u>, 536 U.S. 216, 861 (2011) (federal habeas relief does not lie for errors of state law).

---

[33]When Austin asserted this claim in his post-conviction application, the state trial court denied relief citing La. Code Crim. P. art. 930.4, which prohibits review on post-conviction of a claim that was addressed on direct appeal. La. Code Crim. P. art. 930.4(A) is not a true procedural bar that would prevent this court from reviewing the claim. The bar instead precludes Louisiana courts from review of a post-conviction claim which was already "fully litigated" on direct appeal. <u>Bennett v. Whitley</u>, 41 F.3d 1581 (5th Cir. 1994). The rule in presumption is that the claims were not new or different from something previously litigated and resolved on appeal by the higher state courts. <u>Id.</u>, at 1583. Thus, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." <u>Id.</u> A federal habeas court simply "look[s]-through" the ruling on collateral review and considers the findings on direct appeal where the claims were first litigated. <u>Id.</u>, at 1582-83.

Moreover, Louisiana law concerning such a motion is consistent with the <u>Jackson</u> constitutional standards.  Under Louisiana law, a post-verdict judgment of acquittal may "be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La. Code Crim P. art. 821(B). Thus, the motion is evaluated under a standard virtually identical to insufficient evidence claims under <u>Jackson</u>.  <u>State v. Durand</u>, 963 So.2d 1028, 1033 (La. App. 5th Cir. 2007); <u>State v. Jones</u>, 952 So.2d 705, 707 (La. App. 4th Cir. 2006) (citing <u>State v. Thibodeaux</u>, 750 So.2d 916, 926 (La. 1999)); <u>State v. Williams</u>, 891 So.2d 26, 30 (La. App. 4th Cir. 2004) (citing <u>State v. Brown</u>, 620 So.2d 508, 513-514 (La. App. 4th Cir. 1993)).

Austin correctly notes that Louisiana law allows a crime to be proven by both direct and circumstantial evidence. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. Rev. Stat. § 15:438.  However, on federal habeas corpus review, the court does not apply this state law "reasonable hypothesis" standard, and instead must apply <u>Jackson</u>. <u>See</u> <u>Gilley v. Collins</u>, 968 F.2d 465, 467 (5th Cir. 1992) (citing <u>Schrader v. Whitley</u>, 904 F.2d 282, 284 (5th Cir. 1990)). To the extent petitioner relies on Louisiana's circumstantial evidence rule itself, "[t]his is not a purely separate test from the <u>Jackson</u> standard to be applied instead of a sufficiency of the evidence test.  . . . Ultimately, all evidence, both direct and circumstantial, must be sufficient under <u>Jackson</u> to satisfy a rational juror that the

defendant is guilty beyond a reasonable doubt." State v. Porretto, 468 So.2d 1142, 1146 (La. 1985); accord State v. Williams, 693 So.2d 204, 208 (La. App. 4th Cir. 1997). The reasonable hypothesis standard under state law is "just an evidentiary guide for the jury. If a rational trier of fact reasonably rejects the defendant's hypothesis of innocence, that hypothesis fails." State v. Maxie, 614 So.2d 1318, 1321 (La. App. 3d Cir. 1993); accord State v. Williams, 693 So.2d at 208. The appropriate standard for this court remains Jackson as applied under the parameters of the AEDPA.

For purposes of federal habeas review, this court must evaluate Austin's sufficiency of the evidence claim under Jackson, which was applied and followed by the Louisiana Fifth Circuit.  Under Jackson, a federal habeas court addressing a sufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011); Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008).  Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n.16).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010)

24

(recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. United States v. Young, 107 F. App'x 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993)); see Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). All credibility choices and conflicting inferences must be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses in place of the fact-finder. Weeks v. Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985). In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera, 506 U.S. at 402).

A claim of insufficient evidence presents a mixed question of law and fact. Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this

court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Austin was found guilty of four counts of simple burglary of an automobile, which is defined by La. Rev. Stat. § 14:62 as "the unauthorized entering of any ... vehicle ... with the intent to commit a felony or any theft therein..." State v. Mouton, 129 So.3d 49, 52 (La. App. 3d Cir. 2013). Theft is defined by La. Rev. Stat. § 14:67(A) as "the misappropriation or taking of anything of value which belongs to another, either without the consent of the other to the misappropriation or taking, or by means of fraudulent conduct, practices, or representations. An intent to deprive the other permanently of whatever may be the subject of the misappropriation or taking is essential." State v. Kennerson, 695 So.2d 1367, 1371-72 (La. App. 3d Cir. 1997).

Simple burglary requires specific intent, which is defined as that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. Rev. Stat. § 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Harris, 812 So.2d 612 (La. 2002).

In this case, the evidence and testimony at trial demonstrated that, on July 25, 2009, items were taken from a Toyota Sequoia owned by Randy St. Blanc.[34] Among the

---

[34]St. Rec. Vol. 5 of 10, Trial Transcript, p. 761 (St. Blanc), 7/26/11.

items were a coin holder and a pair of Maui Jim sunglasses.[35]  Items were also taken that

night from a Toyota Tacoma owned by Eric Berteau.[36]  The items included an iPod and

accessories, running shoes, a Counter-IED Smart Book (a military handbook), and a

military issued laptop computer, case and battery.[37]  David Boudry also had items taken

from his Toyota Corolla which was parked in the driveway of his home that same night.[38]

Taken from the car and trunk were new Nike tennis shoes, Husky trash bags, a Mizano

duffle bag and Diamond baseballs.[39]  A Honda Accord owned by Jonathan Warren had

items taken from it while parked in his driveway that night.[40]  Taken from his car were

a half carton of Marlboro Light cigarette packs, a red flashlight and a CD case.[41]

The police located the missing items in an abandoned Lexus vehicle reported and

found in another neighborhood.[42]  Among the many items found by deputies in the

vehicle were a shoe box, shoes, an iPod, a pill bottle belonging to Joseph Austin, a bank

bag, a carton of cigarettes, a briefcase, a bag with a laptop, a laptop battery, a red

---

[35]Id., at p. 762 (St. Blanc).

[36]Id., at p. 767 (Berteau).

[37]Id., at pp. 768-70 (Berteau).

[38]Id., at p. 773 (Boudry).

[39]Id., at pp. 774-76 (Boudry).

[40]Id., at p. 778 (Warren).

[41]Id., at p. 779 (Warren).

[42]St. Rec. Vol. 5 of 10, Trial Transcript, p. 742 (Deputy Tarullo), 7/26/11.

flashlight and money.[43]  Other items including baseballs, tools, contractor bags and red and black athletic shoes were identified as having been taken in the vehicular burglaries under investigation.[44]  Each of the vehicle owners, Boudry, St. Blanc, Warren and Berteau, testified that they did not give anyone permission to enter their vehicles or to remove the items taken.[45]

The evidence also established that the abandoned Lexus was owned by Cherie Suhor, with whom Austin lived.[46]  Suhor confirmed that Austin had a set of keys to her car and had driven her to work in the car on the night of the burglaries.[47]  Austin returned to pick her up from work in a different car driven by Errol Falcon.[48]  It was not until later in the morning that she learned that her car was abandoned after being involved in a hit-and-run accident and found to contain the stolen items.[49]

Based on this record, a reasonable jury could resolve that, while driving around in Suhor's Lexus, Austin entered several vehicles without the permission of the owners and took numerous items of value from each of the vehicles with the intent to deprive the

---

[43]Id., at pp. 742-46 (Deputy Tarullo).

[44]Id., at p. 743-46 (Deputy Tarullo).

[45]St. Rec. Vol. 5 of 10, Trial Transcript, p. 764 (St. Blanc), 7/26/11; p. 771 (Berteau); pp. 776-77 (Boudry); p. 779 (Warren).

[46]Id., at pp. 782-83 (Suhor).

[47]Id., at pp. 783-84 (Suhor).

[48]Id., at p. 787 (Suhor).

[49]Id., at 789 (Suhor).

owners of those items.  His involvement and intent to commit the thefts was established by the evidence and circumstances demonstrating that he had access to and was in possession of Suhor's car, his personal items were found in the car with the stolen items, and he professed his involvement to Errol Falcon Jr., whom the jury apparently found to be credible in that regard.

The jury also heard testimony that Austin had his own vehicle at the time of these burglaries (which was not in working order), it was possible that Austin left Suhor's car at her home, and none of the victims could positively say that Austin broke into their vehicles.[50]  The jury clearly did not believe Austin's line of defense and instead found credible the testimony indicating that Austin used Suhor's car to engage in the multiple burglaries and then abandoned the car when he thought police were on to him.[51]  It is not for this court on federal habeas review to reevaluate witness credibility and evidence or substitute its judgment for that of the jury, as Austin now asks the court to do.

The evidence was fully sufficient to establish that Austin was guilty of simple burglary of the automobiles in question.  The denial of relief on this issue was not contrary to or an unreasonable application of federal law.  Austin is not entitled to relief on this issue.

---

[50]St. Rec. Vol. 5 of 10, Trial Transcript, p. 765 (St. Blanc), 7/26/11;  p. 772 (Berteau); p. 777 (Boudry); pp. 780-81 (Warren); p. 785, 803-05 (Suhor).  See also, St. Rec. Vol. 6 of 10, Trial Transcript (continued), pp. 873-74 (Falcon), 7/26/11.

[51]See St. Rec. Vol. 6 of 10, Trial Transcript (continued), pp. 868-69 (Falcon), 7/26/11.

VII.   DENIAL OF MOTION TO QUASH (CLAIM NO. 2)

Austin claims that the state trial court erred when it denied the motion to quash the indictment on grounds of double jeopardy.  Construed broadly, this claim is that Austin was subjected to double jeopardy when he was tried a second time after the first trial ended in mistrial caused by the State.  He claims that the State erred in placing Errol Falcon Jr. on the stand without first notifying defense attorney, which forced his counsel to move for a mistrial.  Austin claims that the State's error barred his retrial under the Double Jeopardy Clause.

To the extent Austin requests that the court review the propriety of denial of the motion to quash under state law, "federal habeas corpus relief does not lie for errors of state law."  Swarthout, 562 U.S. at 219 (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991) (internal quotations omitted).  This court does not sit as a "super" state supreme court.  See Dickerson, 932 F.2d at 1142 (citing Martin v. Wainwright, 428 F.2d 356, 357 (5th Cir. 1970), cert. denied, 400 U.S. 918 (1970)).  This court will only review Austin's claim if he can establish that the state courts' denial of his motion to quash constituted a violation of a constitutional right, here the constitutional protection against double jeopardy, which he has not done.

A double jeopardy claim presents a mixed question of law and fact for purposes of this court's federal habeas review.  Carlile v. Cockrell, 51 F. App'x 483, 2002 WL 31319380, at *1 (5th Cir. 2002); Johnson v. Karnes, 198 F.3d 589, 593 (6th Cir. 1999).

30

The court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of Supreme Court precedent.

The Double Jeopardy Clause of the Fifth Amendment protects a criminal defendant from multiple prosecutions for the same offense. Oregon v. Kennedy, 456 U.S. 667, 671 (1982) (citing United States v. Dinitz, 424 U.S. 600, 606 (1976)). The Double Jeopardy Clause affords a criminal defendant a "valued right to have his trial completed by a particular tribunal." Kennedy, 456 U.S. at 671-72 (quoting Wade v. Hunter, 336 U.S. 684, 689 (1949)). However, a defendant may waive double jeopardy protections by consenting to a mistrial before a verdict is reached. United States v. Bauman, 887 F.2d 546, 549 (5th Cir. 1989). "[A] motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." Dinitz, 424 U.S. at 607 (emphasis added); United States v. Botello, 991 F.2d 189, 192 (5th Cir. 1992). The Supreme Court has long held that when a defendant moves for the mistrial, only a narrow exception based on prosecutorial or judicial error results in a Double Jeopardy Clause bar to retrial. Kennedy, 456 U.S. at 673.

A retrial caused by prosecutorial misconduct may constitute double jeopardy only if "the prosecutor's actions giving rise to the motion for mistrial were done 'in order to goad the [defendant] into requesting a mistrial." Kennedy, 456 U.S. at 676 (quoting Dinitz, 424 U.S. at 611). However, "gross negligence by the prosecutor, or even

31

intentional conduct that seriously prejudices the defense, is insufficient to apply the double jeopardy bar." United States v. El-Mezain, 664 F.3d 467, 561 (5th Cir. 2011) (citing United States v. Wharton, 320 F.3d 526, 531–32 (5th Cir.2003); United States v. Singleterry, 683 F.2d 122, 123 & n.1 (5th Cir. 1982)). Thus, prosecutorial misconduct that might be sufficient to warrant a mistrial, "does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause." Kennedy, 456 U.S. at 675-676; Wharton, 320 F.3d at 531-32; see also, Martinez v. Caldwell, 644 F.3d 238, 243 (5th Cir. 2011) ("A prosecutor...must specifically act in 'bad faith' or must intend to goad the defendant 'into requesting a mistrial or to prejudice the defendant's prospects for an acquittal.'") (citation omitted). Determining this level of intent is "a finding of fact" based on the objective facts and circumstances of the case. Kennedy, 456 U.S. at 675.

In Austin's case, the state trial court and the state appellate court found that the State had not acted in bad faith and had no intent to provoke the defense into seeking a mistrial. These factual findings are supported by the record and are entitled to deference by this court.

The record indicates that the State called Falcon to testify after he approached the police to offer information about the burglaries and Suhor's car.[52]  Falcon waived his

---

[52]St. Rec. Vol. 4 of 10, Trial Transcript, p. 510, 7/12/11.

right to counsel before speaking to the officers.[53]  By that time, Falcon had already entered a guilty plea to nine counts of possession of stolen goods and was awaiting sentencing on an agreed sentence of 20 years.[54]  The State also dismissed the five simple burglary counts against Falcon and agreed not to use his statements and testimony against him even if he withdrew his guilty pleas.[55]  Thus, the State saw no need to and did not notify Falcon's counsel that he was being called to testify at Austin's trial.

While Falcon was testifying on July 12, 2011, the prosecutor received a message that Falcon's criminal attorney was objecting to his appearance as a witness.[56]  After discussing the matter with his counsel, Falcon decided not to testify further based on his counsel's advice and despite his immunity agreement and dismissal of the simple burglary charges against him.[57]  The state trial court granted the defense motion for mistrial, because the defense would not have a chance to cross-examine Falcon on his testimony as to facts relevant to the jury's verdict.[58]

At a July 20, 2011, hearing before the second trial, Austin's counsel made an oral motion to quash the indictment pursuant to La. Code Crim. P. art. 523 on the grounds of

---

[53]Id., at p. 514.

[54]Id., at pp. 502, 508.

[55]Id., at pp. 502, 510-11, 515.

[56]Id., at pp. 501-505.

[57]Id., at pp. 507-08, 518-19.

[58]Id., at pp. 519-21.

double jeopardy.[59]  His counsel argued that the mistrial was granted as a result of the State's gross negligence or intentional misconduct when the State placed Falcon on the stand without consulting his criminal attorney.  Austin's counsel argued that the State called Falcon to provoke the mistrial after realizing that the jury was likely to aquit Austin based on lack of evidence of his involvement in the burglaries.  Defense counsel further argued that, once Falcon declined to continue testifying on his counsel's advice, the defense was provoked and forced by the State's actions to move for a mistrial.  The court rejected these arguments by denying the motion without stating reasons.[60]

Austin's appointed counsel argued on direct appeal that the denial of the motion to quash was error.  The Louisiana Fifth Circuit found that "the record belies defendant's assertion that the State intentionally acted to provoke his motion for mistrial."[61]  The court found that the State acted in good faith because Falcon was proceeding under an immunity grant and dismissal of the simple burglary charges.  The court concluded that, even if the State acted negligently in failing to contact Falcon's attorney, mere negligence was not prosecutorial misconduct sufficient to bar a second prosecution.

The record supports the state courts' findings that the prosecution did not intentionally provoke the defendant into moving for the mistrial.  Austin has presented

---

[59]St. Rec. Vol. 4 of 10, Hearing Transcript, pp. 550-51, 7/20/11.

[60]Id., at p. 555.

[61]Austin, 113 So.3d at 306; St. Rec. Vol. 8 of 10, 5th Cir. Opinion, 12-KA-629, 3/13/13.

nothing to this court to establish that he was likely to be aquitted when the State called Falcon or that the State intended to create a mistrial scenario.  To the contrary, the record strongly supports the state courts' findings concerning the State's inadvertence and mere negligence in failing to confer with Falcon's counsel before calling him to the stand in light of the circumstances of his agreement.  The state courts' findings, conclusions and denial of relief on this issue were not contrary to or an unreasonable application of federal law.  Austin is not entitled to relief.

VIII.  <u>EXCESSIVE SENTENCE (CLAIM NO. 3)</u>

Austin asserts that the state trial court imposed an excessive sentence, because the six year terms imposed on each count were made consecutive for a total of 24 years in prison for a non-violent offender.  He contends that, under Louisiana law, the sentences should have been concurrent since they arose from the same scheme of events.  His appointed counsel asserted this claim on direct appeal, and the Louisiana Fifth Circuit denied relief, finding that the sentences were within statutory limits for a second felony offender and were comparable to other sentences imposed in similar cases.

To the extent Austin claims that the state trial court misapplied state sentencing law related to consecutive sentences, he has not stated a cognizable federal habeas corpus claim.  <u>See</u>, <u>e.g.</u>, <u>Butler v. Cain</u>, 327 F. App'x 455, 457 (5th Cir. 2009) (claim that sentence violated state law is not cognizable in federal habeas proceeding.); <u>Haynes v. Butler</u>, 825 F.2d 921, 924 (5th Cir. 1987) ("... a state's failure to follow its own

sentencing procedures is not reviewable by federal habeas corpus."). Austin is not entitled to federal habeas relief on that point.

As a federal issue considered under the AEDPA standard, an excessive sentence claim presents a question of law. Chatman v. Miller, No. 05-1481, 2005 WL 3588637, at *5 (E.D. La. Nov. 9, 2005); Davis v. Cain, 44 F. Supp.2d 792, 798 (E.D. La. 1999); Jones v. Kaylo, No. 99-0567, 1999 WL 544680, at *1 (E.D. La. July 26, 1999). Therefore, this court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. Haynes, 825 F.2d at 923-24; see Turner v. Cain, 199 F.3d 437, 1999 WL 1067559, at *3 (5th Cir. 1999) (Table, Text in Westlaw) (because sentence was within Louisiana statutory limits and within trial court's discretion, petitioner failed to state cognizable habeas claim for excessive sentence); Dennis v. Poppel, 222 F.3d 1245, 1258 (10th Cir. 2000) (citing Haynes, 825 F.2d at 923-24). A sentence within statutory limits will not be upset by a federal habeas court, unless it is grossly disproportionate to the gravity of the offense. Harmelin v. Michigan, 501 U.S. 957, 1001 (1991); Solem v. Helm, 463 U.S. 277, 291-92 (1983). "[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court will consider (a) the sentences imposed on other criminals in the same jurisdiction and (b) the sentences imposed for commission of the

same offense in other jurisdictions. Smallwood v. Johnson, 73 F.3d 1343, 1347 (5th Cir. 1996) (quoting Harmelin, 501 U.S. at 1005) (citing McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992)); United States v. Gray, 455 F. App'x 448, 449 (5th Cir. 2011); United States v. Thomas, 627 F.3d 146, 160 (5th Cir. 2010), cert. denied, __ U.S. __, 131 S. Ct. 2470 (2011).

If the sentence is not "grossly disproportionate" in the first instance, however, the inquiry is finished. United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997), overruled in part on other grounds, United States v. O'Brien, 560 U.S. 218, 234-35 (2010) (as recognized in United States v. Johnson, 398 F. App'x 964, 968 (5th Cir. 2010)). As the Supreme Court has noted, successful proportionality challenges outside the context of capital punishment are "exceedingly rare" and constitutional violations are sustained only in "extreme" or "extraordinary" cases. Ewing v. California, 538 U.S. 11, 22 (2003) (quotation and citations omitted); Lockyer v. Andrade, 538 U.S. 63, 73, 77 (2003) (quotation and citations omitted).

Louisiana law provides that a person convicted of simple burglary "shall be fined not more than two thousand dollars, imprisoned with or without hard labor for not more than twelve years, or both." La. Rev. Stat. § 14:62(B). However, Austin was found a second felony offender, a finding he does not challenge.[62] As a second offender, he faced

---

[62] St. Rec. Vol. 6 of 10, Sentencing Transcript, p. 1083, 9/14/11.

a sentence of "not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction."  La. Rev. Stat. § 15:529.1(A)(1).

Thus, as a second offender, Austin faced a sentencing range of six to 24 years.  His actual sentence was six years on each count, run consecutively, totaling 24 years.  Both the individual terms and the composite are within the statutory limits under state law.  Accordingly, this court considers only proportionality compared with sentences imposed in similar cases.

The United States Supreme Court has stated that "'[t]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime.'"  Ewing, 538 U.S. at 23 (quoting Harmelin, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)).  The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality.  Id., 538 U.S. at 30 (quoting Harmelin, 501 U.S. at 1005).

In Austin's case, the state trial court relied on the facts of the case to impose the sentence.[63]  As the state appellate court determined, this included the fact that Austin "went on a crime spree in the span of several hours, burglarizing four separate vehicles,"

---

[63]Id., at p. 1085.

and had a prior residential burglary and drug charge.[64]  These separate burglaries and his

past criminal history justified the discretionary imposition of consecutive sentences under

Louisiana law.  La. Code Crim. P. art. 883; State v. Farris, __ So.3d __, 2016 WL

7238969, at *9 (La. App. 2d Cir. Dec. 14, 2016); State v. Thomas, 719 So.2d 49, 49 (La.

1998) (citing State v. Williams, 445 So.2d 1171 (La. 1984); State v. Jacobs, 371 So.2d

727 (La. 1979)) ("[A] trial judge retains the discretion to impose consecutive sentences

on the basis of other factors, including the offender's past criminality and violence in the

charged crimes, or the risk he or she poses to the general safety of the community.").

Louisiana court decisions establish that Austin's sentence was not out of line with

sentences imposed upon similarly situated defendants who were second offenders with

multiple counts of simple burglary of an automobile.  See, e.g., State v. Jetton, 756 So.2d

1206, 1210 (La. App. 2d Cir. 2000) (second offender sentenced to serve consecutive

sentences of six years in prison on each of three counts of simple burglary of a vehicle,

for a total of 18 years; two of the burglaries occurred on the same night and the third was

six days earlier); State v. Normandin, 750 So.2d 321, 323 (La. App. 2d Cir. 1999)

(second offender sentenced to serve six years in prison on each of four counts of simple

burglary of an automobile and five years in prison on one count of felony theft, all to run

consecutively for a total of 29 years); see, State v. Smith, No. 2015-KA-1361, 2016 WL

---

[64]Austin, 113 So.3d at 315; St. Rec. Vol. 8 of 10, 5th Cir. Opinion, 12-KA-629, pp. 12-13,
3/13/13.

759168, at *1 (La. App. 1st Cir. Feb. 24, 2016) (second offender sentenced to serve 19 years in prison on each of nine counts of simple burglary of a vehicle and 12 years in prison on each of two counts of attempted simple burglary of a vehicle to run consecutively with sentences of 19 years in prison on five other counts of simple burglary of a vehicle, for a total of 38 years; all burglaries occurred on the same night); State v. Hebert, No. 2014-KA-1047, 2015 WL 1019505, at *1 (La. App. 1st Cir. Mar. 9, 2015) (second offender sentenced to serve 18 years in prison on each of nine counts of simple burglary of a vehicle, 12 years in prison for one count of attempted simple burglary and 6 years in prison for one count of attempted simple burglary, with five of the counts to run consecutively to the others, for a total of 36 years; each of the burglaries occurred on the same night); see also, State v. Arceneaux, 111 So.3d 1177, 1179 (La. App. 3d Cir. 2013) (first offender sentenced to serve 30 years in prison for aggravated burglary of a woman's apartment and a consecutive sentence of five years in prison for one count of simple burglary of her automobile, for a total of 35 years).

Austin has not shown that his sentence was grossly disproportionate or unconstitutionally excessive under the circumstances of his case or in comparison with other similar cases in Louisiana. The state courts' denial of relief on this issue was neither contrary to established Supreme Court case law nor an unreasonable application of Supreme Court precedent. Austin is not entitled to relief on this claim.

IX.    ADMISSIBILITY OF EVIDENCE (CLAIM NO. 4)

Austin asserts that the state trial court erred in allowing the State to admit unauthenticated and uncertified telephone records during the testimony of Cherie Suhor. Austin argues that the records were not admissible under La. Code Ev. art. 901(B)(6) and the Supreme Court's holding in <u>Bullcoming v. New Mexico</u>, 564 U.S. 647 (2011), because they were not authenticated and Suhor did not own the phone, did not recall her own cell phone number and did not recognize the phone number indicated on the records.

Austin asserted this claim pro se on direct appeal to the Louisiana Fifth Circuit. The court denied relief finding that the records did not need to be authenticated under Louisiana law. The court found that testimony showed Suhor identified both the exhibit as her cell phone records and calls among herself, her former boyfriend and Austin, which complied with the admissibility requirements under La. Code Ev. art. 901. The court also held that the evidence did not violate his confrontation rights because it was not testimonial under federal law. This was the last reasoned opinion on the issue.

To the extent that Austin argues that the evidence was admitted in violation of Louisiana law, that claim is not cognizable on federal habeas review. <u>See Swarthout</u>, 562 U.S. at 216 (federal habeas review does not lie for errors of state law). Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. <u>Estelle</u>, 502 U.S. at 67-68; <u>Gonzales v. Thaler</u>, 643 F.3d 425, 429 (5th Cir. 2011); <u>Jernigan v. Collins</u>, 980 F.2d 292, 298 (5th Cir. 1992). Thus, federal courts do not sit to review the propriety of state court

evidentiary rulings, unless the introduction of the evidence violates federal law.  See Lisenba v. People of the State of California, 214 U.S. 219, 236-37 (1941).

Austin's claim, construed broadly, is that introduction of the telephone records through Suhor violated his rights under the Confrontation Clause of the Sixth Amendment, citing the Supreme Court's holding in Bullcoming, 564 U.S. at 647.  Claims asserting that a defendant's confrontation rights were violated present a mixed question of law and fact.  Fratta v. Quarterman, 536 F.3d 485, 499 (5th Cir. 2008); Horn v. Quarterman, 508 F.3d 306, 312 (5th Cir. 2007).  The court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of federal law as determined by the Supreme Court.  Buckenberger v. Cain, 471 F. App'x 405, 406 (5th Cir. 2012) (citing Fratta, 536 F.3d at 499).  In this case, Austin has failed to meet his burden, and Bullcoming does not provide a basis for relief.

The Sixth Amendment affords criminal defendants in state court trials a right to confront witnesses against them.  Pointer v. Texas, 380 U.S. 400, 403 (1965).  This right ensures reliability of the evidence by requiring statements under oath, submission to cross-examination and the opportunity for the jury to assess witness credibility.  California v. Green, 399 U.S. 149, 158 (1970).  The Supreme Court has long held that testimonial statements, those statements made for the purpose of establishing or proving a particular fact, are inadmissible in criminal prosecutions, unless the declarant is unavailable for trial and the defendant had a prior opportunity for cross-examination.

Crawford v. Washington, 541 U.S. 36, 59 & 68-89 (2004).  However, the Confrontation

Clause does not prohibit the admissibility of non-testimonial statements.  Davis v.

Washington, 547 U.S. 813, 821 (2006).  Instead, it applies only to "'witnesses' against

the accused ... those who 'bear testimony[,]'" Crawford, 541 U.S. at 51, and only

testimonial statements "cause the declarant to be a 'witness' within the meaning of the

Confrontation Clause." Davis, 547 U.S. at 821.  "It is the testimonial character of the

statement that separates it from other hearsay that, while subject to traditional limitations

upon hearsay evidence, is not subject to the Confrontation Clause." Id.

In Melendez-Diaz v. Massachusetts, 557 U.S. 305 (2009), the Supreme Court

addressed "'certificates of analysis'" created as evidence for a criminal proceeding,

sworn to before a notary public, and identifying a suspect substance as cocaine. Id., 557

U.S. at 308, 311.  The Court held that the certificates were "quite plainly affidavits" and

testimonial for purposes of the Confrontation Clause, and therefore, entitled a defendant

the opportunity to confront the analysts at trial. Id., 557 U.S. at 310-11, 328-29.  Later,

in Bullcoming, the Supreme Court deemed a certified blood-alcohol forensic laboratory

report, prepared to assist a police investigation and establish or prove a fact in a criminal

proceeding, testimonial in character. Id., 564 U.S. at 663-64.  The in-court testimony of

a scientist who did not sign the certification or perform or observe the test reported in the

certification did not satisfy the accused's constitutional right to confrontation.  "The

accused's right is to be confronted with the analyst who made the certification, unless

that analyst is unavailable at trial, and the accused had an opportunity, pretrial, to cross-examine that particular scientist." Id., 564 U.S. at 652.

However, neither Bullcoming nor Melendez-Diaz, nor any other Supreme Court decision, has characterized cell phone records or similar business documents as testimonial. As explained in Melendez-Diaz, "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because - having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial - they are not testimonial." Id., 557 U.S. at 324.

In this case, Austin fails to establish that Suhor's cell phone records and her related testimony were testimonial. The records clearly were not prepared for the primary purpose for use in litigation. See, e.g., United States v. Yeley-Davis, 632 F.3d 673, 679-80 (10th Cir. 2011) (cell phone records were not testimonial where they were "'created for the administration of [Verizon's] affairs and not for the purpose of establishing or proving some fact at trial'") (citing Melendez-Diaz, 557 U.S. at 324).

In addition, Austin has misrepresented the facts established in the trial transcript. The record supports his conclusion that Suhor no longer used the cell phone number at issue at the time of trial.[65] However, the transcript read as a whole reflects that, after refreshing her memory, Suhor recognized her prior cell phone number and was able to

---

[65]St. Rec. Vol. 5 of 10, Trial Transcript, p. 786 (Suhor), 7/26/11.

44

identify the numbers associated with her former boyfriend and Austin which also appeared on the phone records.[66] Thus, to the extent relevant, it was reasonable for the fact-finder to find her testimony about the records and phone calls credible.

Austin has failed to establish that the introduction of Suhor's cell phone records violated his confrontation rights. The records were issued to Suhor as a normal service bill for her cell phone use and were not prepared by the service provider for use in litigation. The records were not testimonial under the Supreme Court precedent.

The denial of relief by the state courts' was not contrary to, or an unreasonable application of Bullcoming or related Supreme Court precedent. Austin is not entitled to relief on this issue.

X.    DENIAL OF MOTION TO SUPPRESS STATEMENTS (CLAIM NO. 5)

Austin claims that the state trial court erred by denying the motion to suppress his statement to police because he invoked his right to counsel during the statement. The statement was challenged by Austin's counsel before the second trial by motion to suppress. At a July 20, 2011, hearing, counsel specifically referenced the following statement made by Austin to Detectives Jeremy Pitchford and Jody Fahrig during pre-arrest questioning on the instance charges: "If that's what y'all gonna arrest me for, f*ck, take me to jail and let me f*cking have -- call a lawyer and sh*t because this is

---

[66]Id., at pp. 785-86 (Suhor); see also, St. Rec. Vol. 6 of 10, Trial Transcript, pp. 982-983 (Suhor), 7/27/11.

bullsh*t."[67]  His counsel argued that Austin's statement invoked the right to counsel and he was denied that right when the questioning continued.  After reviewing the transcript of Austin's statement, the state trial court denied the motion, finding that Austin did not make an unequivocal invocation of his right to counsel.

On direct appeal, Austin asserted pro se that it was error for the state trial court to deny the motion to suppress.  The Louisiana Fifth Circuit found no error under state or federal law.  The court first determined that Austin was read his <u>Miranda</u> warnings and knowingly and intelligently waived his constitutional rights before being questioned.  In addition, the court held that Austin did not make an unequivocal and unambiguous request for counsel when he made the hypothetical statement, which was prefaced with the term "if."  This was the last reasoned opinion on the issue.[68]

The voluntariness of a confession is a mixed question of law and fact.  <u>Miller v. Fenton</u>, 474 U.S. 104, 112 (1985); <u>ShisInday v. Quarterman</u>, 511 F.3d 514, 522 (5th Cir. 2007) (citing <u>Miller</u>, 474 U.S. at 112).  A federal court on habeas review must respect the state court's determination of voluntariness as long as it was not "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); <u>Barnes v. Johnson</u>, 160 F.3d 218, 222 (5th Cir.

---

[67]St. Rec. Vol. 4 of 10, Hearing Transcript, p. 536, 7/20/11.

[68]When Austin reasserted the issue in his post-conviction application, the state trial court declined to consider the claim because it was repetitive of matters fully addressed on direct appeal, citing La. Code Crim. P. art. 930.4.  St. Rec. Vol. 7 of 10, Trial Court Order, 9/19/14.  Austin did not seek review of that ruling.

1998).  The state court's related factual determinations are presumed to be correct and are overturned only if they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); Barnes, 160 F.3d at 222; see also, Miller, 474 U.S. at 117.

Under Miranda v. Arizona, 384 U.S. 436 (1966), a statement made by a person in custody is inadmissible unless that person was informed that he has the right to have an attorney present during questioning, that he has the right to remain silent, and that anything that he says may be used against him.  Id., 384 U.S. at 444-45.  A person may waive these rights so long as the waiver is knowing and voluntary.  Moran v. Burbine, 475 U.S. 412, 421 (1986).  During custodial interrogation, "the right to have counsel present ... is indispensable to the protection of the Fifth Amendment privilege." Miranda, 384 U.S. at 469.  When a suspect declares that he wants an attorney, "the interrogation must cease until an attorney is present."  Id., 384 U.S. at 474; see also, Edwards v. Arizona, 451 U.S. 477, 484 (1981); see also, Maryland v. Shatzer, 559 U.S. 98, 103-04 (2010) (when a suspect asserts his right to counsel, the police must end all questioning until an attorney is available or the suspect reinitiates the interrogation).

For those reasons, a statement made after asserting Miranda rights is presumed involuntary, "even where the suspect executes a waiver and his statements would be considered voluntary under traditional standards." McNeil v. Wisconsin, 501 U.S. 171, 177 (1991).  This compels police officers to honor an unambiguous invocation of a

person's rights. Miranda, 384 U.S. at 473-74. Thus, once the right to counsel clearly is invoked, an officer may not make further attempts to elicit statements until the suspect initiates further discussion. Edwards, 451 U.S. at 484-85; Shatzer, 559 U.S. at 103-04.

In Edwards, the Supreme Court clarified that, once the request for counsel is made during questioning, "an accused . . . is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused initiates further communication, exchanges, or conversations with the police." Edwards, 451 U.S. at 484-85. The Edwards rule is "designed to prevent police from badgering a defendant into waiving his previously asserted Miranda rights." Michigan v. Harvey, 494 U.S. 344, 350 (1990).

However, ambiguous assertions of the right to counsel are not enough to require police to stop an interrogation. See Barnes, 160 F.3d at 224 (the accused did not invoke the right to counsel in light of his prior statements and his decision to initiate discussions with police after he heard and waived his Miranda rights). The test is whether, viewed objectively, a reasonable police officer in the circumstances would understand the request to be an invocation of the right to a lawyer. Davis v. United States, 512 U.S. 452, 458-59 (1994) (the suspect's statement, "Maybe I should talk to a lawyer," made over ninety minutes into a custodial interrogation, after he previously waived his rights, was an ambiguous assertion of the right to counsel). A court must determine whether the accused "articulate[d] his desire to have counsel present sufficiently clearly that a

reasonable police officer in the circumstances would understand the statement to be a request for an attorney." <u>Davis</u>, 512 U.S. at 459.

The Supreme Court has expressly declined to "require law enforcement officers to cease all questioning" when a suspect makes an ambiguous or equivocal reference to an attorney. <u>Davis</u>, 512 U.S. at 459-60. Once a suspect validly waives his rights, police questioning may continue until the suspect "clearly requests an attorney." <u>Id</u>., 512 U.S. at 461. A police officer is not required to ask clarifying questions of the accused, although the Supreme Court has suggested that it may "often be good police practice" to do so. <u>Id</u>.

Thus, an unambiguous statement "that can reasonably be construed to be an expression of a desire for the assistance of an attorney" is required under this stringent standards set forth by the Supreme Court. <u>Id</u>., 512 U.S. at 459. In <u>Davis</u>, the Court established a bright-line rule, under which "a statement either is such an assertion of the right to counsel or it is not." <u>Id</u>. As the United States Fifth Circuit Court of Appeals has declared, a suspect need not "'speak with the discrimination of an Oxford don,' he must nevertheless clearly articulate his desire to have an attorney present." <u>Soffar v. Cockrell</u>, 300 F.3d 588, 595 (5th Cir. 2002) (quoting <u>Davis</u>, 512 U.S. at 459).

Federal courts have long recognized that qualified statements like Austin's about the possibility of getting counsel do not constitute an unambiguous or unequivocal request for counsel. <u>See</u> <u>Soffar</u>, 300 F.3d at 695 (suspects question to the officer as to

whether he should get counsel was equivocal); United States v. Posada-Rios, 158 F.3d

832, 867 (5th Cir. 1998) (a suspect's statement that she "might have to get a lawyer then,

huh?" was not a clear request); United States v. Cherry, 733 F.2d 1124, 1130 (5th Cir.

1984) ("Why should I not get an attorney?" was not a clear request); see also Davis, 512

U.S. at 462 ("Maybe I should talk to a lawyer" was not a clear invocation); Mullins v.

Dir., TDCJ-CID, No. 11cv318, 2012 WL 1570183, at *18 (E.D. Tex. Mar. 19, 2012),

report and recommendation adopted, 2012 WL 1570145, at *1 (E.D. Tex. Oct. 3, 2012)

(accused's statement "I don't know how far this will go without a lawyer being present"

was not clear and unambiguous invocation of his right to counsel); United States v.

Sharp, No. 02cr58, 2002 WL 31855064, at *4 (D. Del. Dec. 20, 2002) (question to

police, "I can have a lawyer here?" was ambiguous and no reasonable officer would have

construed it as a request for counsel); United States v. Zamora, 222 F.3d 756, 766 (10th

Cir. 2000) (continued questioning permissible because defendant's statement "I might

want to talk to an attorney" was not an unequivocal request for counsel); Mincey v.

Head, 206 F.3d 1106, 1132 (11th Cir. 2000) (continued questioning permissible where

defendant's statement "go ahead and run the lawyers" was an ambiguous request for

counsel).

Austin posed a hypothetical question to the officers rather than a clear request for

counsel.  He has not established that he intended at that time to invoke his right to

counsel or to distinguish his statement from those statements referenced in the above-

cited cases, all of which were found ambiguous and equivocal. In voicing his distaste for the questions he was fielding about the stolen property, he somewhat threatened that "if that's what y'all gonna arrest me for..." then "take me to jail and let me ... call a lawyer... ." This was not a clear and unequivocal request to have counsel before continuing to answer questions. The statement was not so clear that a reasonable police officer would have deemed it a request for counsel as required under Miranda and Edwards.

Austin has not established that the state court's decision was contrary to or an unreasonable application of federal law. He is not entitled to relief on this issue.

XI.    EFFECTIVE ASSISTANCE OF COUNSEL (CLAIM NOS. 6 AND 9)

Austin asserts that his right to effective assistance of counsel was denied when the state trial court denied his counsel a continuance to prepare for trial. He further claims that his trial counsel was ineffective when she failed to (1) adequately investigate and impeach Errol Falcon Jr., (2) impeach Cherie Suhor and prevent Detective Joseph Dewhirst from testifying as to the hearsay opinion of Cherie Suhor after opening the door to that testimony, (3) subpoena defense witnesses, (4) obtain complete phone records for Errol Falcon Jr. between July 7 and 24, 2011, (5) move for mistrial after opening the door for Deputy Giovanni Tarullo to mention a fingerprint found not to be admissible at trial, (6) protect his right to confront Celeste Geiger and avoid presenting prejudicial evidence to the jury, (7) object to prejudicial remarks by the prosecution during closing argument, (8) discuss the pre-sentence report with petition, recommend concurrent sentences and

51

object to consecutive sentences and (9) obtain the cell phone records for Errol Falcon Jr. between July 24 and 25, 2009.

Austin asserted these claims on post-conviction review in the state courts. In the last reasoned decision on the issue, the Louisiana Supreme Court concluded without discussion that Austin failed to establish that he received ineffective assistance of counsel under the standards in Strickland v. Washington, 466 U.S. 668 (1984), and attached the state trial court's reasoned opinion.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Clark v. Thaler, 673 F.3d 410, 416 (5th Cir. 2012); Woodfox, 609 F.3d at 789. Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland, 466 U.S. at 668, in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test.  Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' . . . But it is not enough under Strickland, 'that the errors had some conceivable effect on the outcome of the proceeding.'" (citation omitted) Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693); Harrington, 562 U.S. at 112 (Strickland requires a "substantial" likelihood of a different result, not just "conceivable" one.)

On habeas review, the United States Supreme Court has clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington, 562 U.S. at 105.  The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is doubly so.  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington, 562 U.S. at 105.

Thus, scrutiny of counsel's performance under § 2254(d) is "doubly deferential." Cullen, 563 U.S. at 190 (quoting Knowles, 556 U.S. at 123). This court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

Federal habeas courts presume that litigation strategy is objectively reasonable unless clearly proven otherwise by the petitioner. Id., 466 U.S. at 689; Geiger v. Cain, 540 F.3d 303, 309 (5th Cir. 2008); Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)).

A.    DENIED A CONTINUANCE TO PREPARE

In his first argument, Austin claims that he was denied effective assistance of counsel when the state trial court would not grant his counsel a continuance to prepare for the testimony of Errol Falcon Jr. He argues that his counsel was informed only three

days before trial that Falcon would be called as a witness.  As a result, she was unable adequately to prepare and research his testimony, especially since Falcon did not give a statement until July 8, 2011, and the police did not have time to get his phone records to corroborate the statement before the first trial on July 11, 2011.

As an initial matter, Austin's basic facts are incorrect.  The record contains no request by Austin's counsel before the second trial for a continuance based on the State's decision to call Errol Falcon Jr. as a witness.[69]  Thus, there was no denial of a continuance by the state trial court which could have impacted counsel's performance at the second trial which led to his conviction.

Falcon's statement was taken by Detective Pitchford on July 8, 2011,[70] which was three days before Austin's <u>first</u> trial, which was not the trial that led to his conviction. During that trial, the State's questioning of Falcon was ended by the mistrial and Austin's counsel never had a chance to question Falcon.  In fact, the mistrial was premised on the fact that the defense was denied the ability to cross-examine Falcon's limited testimony. Austin cannot establish that his counsel's performance at that trial was deficient or prejudiced by the timing of Falcon's statement because any such issue was remedied by the mistrial.

---

[69]The record reflects that counsel asked for a continuance of the first trial on several grounds, and the motion was denied by the state trial court.  St. Rec. Vol. 2 of 10, Trial Transcript, pp. 215-17, 219, 7/11/11.

[70]St. Rec. Vol. 5 of 10, Trial Transcript, pp. 838-40, 7/26/11.

Austin also has not established that his counsel was unprepared in any way to challenge Falcon's statement or his testimony at the second trial weeks later. The record reflects that his counsel vigorously challenged the veracity of Falcon's statements against Austin throughout the trial. The timing of Falcon's statement, three days before the <u>first</u> trial, was not detrimental to his counsel's preparation for that second trial. Instead, his counsel used the timing of the statement to create suspicion before the jury as to the accuracy and truthfulness of the statement.[71]

Austin's counsel also questioned Detective Dewhirst about the detectives' failure to corroborate Falcon's story or resolve the inconsistencies with the other information already known to them, including the statements from Suhor.[72] His counsel specifically relied on the detectives' failure to obtain Falcon's phone records and to contact other people about the alleged trip to Biloxi in an effort to establish the unreliability of Falcon's statement and the lack of evidence against Austin.[73] Austin's counsel aggressively questioned Falcon at trial and played for the jury the recording of his statement to police, with which she was extremely familiar.[74]

---

[71]<u>See</u>, <u>e.g.</u>, <u>Id.</u>, at pp. 841-42 (Detective Dewhirst).

[72]<u>Id.</u>, at pp. 844-45 (Detective Dewhirst).

[73]<u>Id.</u>, at p. 845 (Detective Dewhirst).

[74]St. Rec. Vol. 6 of 10, Trial Transcript (continued), pp. 870-900 (Falcon cross-examination), 7/26/11; <u>see</u> <u>Id.</u>, at pp. 885, 890 (playing of Falcon's recorded statement).

The record supports the state courts' finding that Falcon failed to establish that he was denied effective assistance of counsel. The state courts' denial of relief was not contrary to nor an unreasonable application of <u>Strickland</u>. He is not entitled to relief on this issue.

## B.   OTHER ACTIONS BY COUNSEL

Austin alleges that his trial counsel was ineffective when she failed in numerous other ways to provide adequate assistance before and during trial. Much of Austin's argument is based on his conclusory declaration that his trial counsel failed adequately to investigate the case. For the following reasons, he has failed to establish that his counsel was ineffective under <u>Strickland</u>.

"'A defendant who alleges a failure to investigate on the part of his counsel must allege <u>with specificity</u> what the investigation would have revealed and how it would have altered the outcome of the trial.'" (emphasis added, citation omitted) <u>Moawad v. Anderson</u>, 143 F.3d 942, 948 (5th Cir. 1998); <u>Druery v. Thaler</u>, 647 F.3d 535, 541 (5th Cir. 2011). A petitioner cannot show prejudice as to a claim that his counsel failed to investigate without adducing what the investigation would have shown. <u>Diaz v. Quarterman</u>, 239 F. App'x 886, 890 (5th Cir. 2007) (citing <u>Strickland</u>, 466 U.S. at 696, recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). To prevail on such a claim, petitioner must provide factual support showing what <u>exculpatory</u> evidence further investigation would

have revealed.  Moawad, 143 F.3d at 948; Brown v. Dretke, 419 F.3d 365, 375 (5th Cir.

2005); Davis v. Cain, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008)

(order adopting referenced Report and Recommendation).

In this case, Austin merely speculates that his counsel was unprepared and did not

adequately investigate the case.  Austin is required to present more than conclusory

assertions to establish ineffective assistance of counsel.  Green v. Johnson, 160 F.3d

1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of

ineffective assistance of counsel are insufficient to raise a constitutional issue.").  He has

identified no exculpatory evidence or favorable witness testimony that would have been

discoverable through more pretrial investigation by his counsel.  He has not specified

what exculpatory information, if any, further preparation or investigation would have

disclosed.  The record demonstrates that counsel was well-versed in the details of the

detectives' investigation and the pretrial statements of all of the State's witnesses,

including those of Falcon and Suhor.  Austin has presented nothing that would establish

a need for counsel to have conducted further investigation.

Austin's additional conclusory individual assertions fail to establish deficient or

prejudicial performance by his counsel under the Strickland standards.  Austin wholly

fails to brief the individual challenges he presents to this court.[75]  He merely presents a

---

[75]See Rec. Doc. No. 3-1, pp. 25-26.

conclusory list of alleged errors by counsel.[76]    Mere conclusory assertions  are

insufficient to state a <u>Strickland</u> claim.  <u>Green</u>, 160 F.3d at 1042.  Even if this court

considered his expanded arguments asserted to the state courts, Austin has failed to

establish that his counsel was ineffective under the <u>Strickland</u> standards for the following

reasons.

(1)    <u>Adequately investigate and impeach Errol Falcon Jr.</u>

Austin contends that his counsel should have presented evidence to the jury that

Falcon was the person who had possession of stolen goods and who was investigated by

the St. Charles Parish Sheriff's Office for the same burglaries at issue in his criminal

case.  Austin claims that his counsel should have investigated and used this information

to prove that Falcon had falsely accused him to avoid the consequences of his own

actions.  However, Austin's counsel did in fact attempt to do exactly this at his trial.

The record is replete with instances where Austin's counsel (and even the

prosecutor) made very clear to the jury that Falcon had in fact been investigated for and

charged with the same burglaries as Austin; that Falcon had pleaded guilty to numerous

counts of possession of stolen property, which included the property related to Austin's

car burglaries; and that Falcon made the accusations against Austin in an effort to secure

a better sentence for the possession of stolen goods charges to which he had already

entered the guilty plea.

---

[76]<u>Id</u>.

The trial transcripts from both trials and the relevant hearings unquestionably established that Austin's counsel made every reasonable and strategic effort to convince the jury that Falcon was fabricating the statements he made on July 8, 2011, for the sole purpose of getting a lighter sentence for himself. Austin's counsel demonstrated extensive knowledge of the facts of Austin's case, Falcon's criminal proceedings and Falcon's statement to the detectives and engaged in detailed cross-examination of Falcon in an effort to demonstrate his selfish motives and inconsistent information.[77] The fact that the jury chose not to accept Austin's defense does not render his counsel ineffective. See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004) ("[A]n unsuccessful strategy does not necessarily indicate constitutionally deficient counsel."); Strickland, 466 U.S. at 689 ("[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.") (citations omitted). Austin's argument in this regard is wholly contradicted by the record.

Austin has failed to establish that the state courts' denial of relief on this issue was contrary to or an unreasonable application of Strickland. He is not entitled to relief on this claim.

---

[77]St. Rec. Vol. 6 of 10, Trial Transcript (continued), pp. 870-900 (Falcon cross-examination), 7/26/11.

(2)    <u>Impeach Cherie Suhor and Prevent Detective Dewhirst's Hearsay Testimony</u>

Austin contends that his counsel was ineffective when she failed to impeach Cherie Suhor and opened the door for Detective Dewhirst to testify as to the hearsay opinion of Suhor about Austin's guilt.  The transcript reflects that Austin's counsel aggressively cross-examined Suhor in an effort to discredit her testimony and statements to police and used Detective Dewhirst's testimony about Suhor's statements in an effort to demonstrate the lack of evidence to support Austin's guilt.

Defense counsel first challenged Suhor's truthfulness by questioning her about her two prior felony convictions, which she had indicated on direct questioning was only one misdemeanor conviction.[78]  His counsel also attempted to establish that Suhor was angry with Austin for moving out of her home and leaving unpaid bills.[79]  His counsel questioned Suhor about the fact that she did not tell police that Austin was in her car on the night of July 24 - 25, 2009, when she first spoke to them; instead, she did not mention Austin having her car that night until six months later.[80]  She questioned Suhor about the multiple keys to the car and her failure to tell police that fact when she first spoke with them.[81]  Austin's counsel continued questioning Suhor about the lack of factual support

---

[78]St. Rec. Vol. 5 of 10, Trial Transcript, pp. 798-99 (Suhor), 7/26/11.

[79]<u>Id.</u>, at pp. 799-800 (Suhor).

[80]<u>Id.</u>, at p. 801 (Suhor).

[81]<u>Id.</u>, at pp. 802-03 (Suhor).

for her assumption that Austin used her car to commit the robberies.[82]  Defense counsel used Suhor's cross-examination in an attempt to cast doubt upon or show inconsistency with Falcon's testimony concerning the alleged discussions about the burglaries in the car after they picked up Suhor from work.[83]

Austin's counsel more than adequately and reasonably challenged Suhor's credibility through cross-examination.  The fact that the jury must have accepted Suhor's testimony as credible was well within their authority as fact-finder and does not render ineffective his counsel's efforts to obtain a different conclusion.

Austin's argument, construed broadly, also asserts that his counsel should not have elicited testimony from Detective Dewhirst about Suhor's feelings and assumptions that Austin left the stolen goods in her car.  Austin appears to refer to a particular answer from Detective Dewhirst during questioning by his counsel.  Specifically, defense counsel asked Dewhirst if Suhor's statement to other detectives on January 8, 2010, led to Austin's arrest.  In confirming that it did, the detective also stated, "when she came to my office that morning and she saw all the stolen property, she knew in her heart that it was Joey Austin that did the burglaries."[84]

---

[82]Id., at pp. 804-805, 807 (Suhor).

[83]Id., at pp. 806-08 (Suhor).

[84]St. Rec. Vol. 6 of 10, Trial Transcript (continued), p. 853 (Detective Dewhirst), 7/26/11.

Counsel challenged Detective Dewhirst on his recollection of Suhor's statement and asserted that Suhor did not finger Austin in her recorded statement.[85]  In response, the Detective conceded that she had not said that in the recorded statement.  "I wouldn't put it in those exact words, but [...] no."[86]  Thus, Austin's counsel was able to clarify for the jury that Suhor did not tell the detectives in January of 2010 that she believed Austin had committed the burglaries.  She also continued to question the detective about the fact that, even if Suhor felt that way, there was no physical evidence to corroborate her belief.[87]

The transcript reflects that Austin's counsel did not intentionally cause the detective to introduce his perception of Suhor's unrecorded response to him.  On the contrary, Austin's counsel asked the detective about the recorded statement made by Suhor to detectives on January 8, 2010.  Once the detective mentioned Suhor's alleged statement to him, Austin's counsel used that information to further the defense theory that there was no physical evidence to support Suhor's statements leading to Austin's arrest.  This was sound trial strategy in the face of the comments made by the detective.  During her overall questioning of the detective, Austin's counsel was able to convey to the jury that Detective Dewhirst had no direct physical evidence or eyewitness, including

---

[85]Id., at p. 854 (Detective Dewhirst).

[86]Id.

[87]Id., at pp. 854-55 (Detective Dewhirst).

Suhor, that could place Austin in Suhor's car at the exact time of the car burglaries or that would directly establish that Austin was one of the two white men seen fleeing Suhor's vehicle.[88]

Austin has failed to establish that his counsel's performance was ineffective under Strickland. The state courts' denial of relief on this issue was neither contrary to nor an unreasonable application of Strickland. He is not entitled to relief on this claim.

(3)    Subpoena Defense Witnesses

Austin contends that his counsel was ineffective because she failed to subpoena defense witnesses. It is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)); Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008). To prevail on such a claim, the petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense. Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray, 265 F. App'x at 298).

---

[88]St. Rec. Vol. 5 of 10, Trial Transcript, pp. 835-837, 844-45, 853-55 (Detective Dewhirst), 7/26/11.

Austin has failed to identify any witness that should have been called and who would have been willing to testify favorably to his defense. Austin is required to present more than conclusory assertions to establish ineffective assistance of counsel. See Green, 160 F.3d at 1042 ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."). Austin therefore has not established that counsel's failure to call unspecified witnesses was deficient performance or otherwise prejudicial to the defense.

The denial of relief on this issue was not contrary to or an unreasonable application of Strickland. Austin is not entitled to relief.

(4&9)        Obtain Falcon's Phone Records for July 24 - 25, 2009 and July 7 - 24, 2011

Construed broadly, Austin's arguments include that his counsel should have sought and obtained copies of Falcon's phone records around the time of the burglaries to establish that Falcon was possibly involved in other car burglaries and/or was not in Biloxi on the evening before the car burglaries. Austin also suggests that the records from the period July 7 - 24, 2011, may have corroborated the defense theory that Falcon tried to get Austin to admit his guilt so Falcon could get a lighter sentence.

The record demonstrates that counsel chose not to determine whether Falcon was actually in Biloxi for tactical reasons in that she used the lack of corroborating evidence to the advantage of the defense. As discussed previously, Austin's counsel used the late timing of Falcon's statement to police and the detectives' failure to pursue corroborating

evidence to support the defense's theory that Falcon fabricated his story.[89]  His counsel specifically relied on the detectives' failure to obtain Falcon's phone records or question other people about the alleged trip to Biloxi in an effort to establish the unreliability of Falcon's statement and the lack of evidence against Austin.[90]  Counsel's decision not to introduce Falcon's telephone records was a sound trial strategy.  If the records could and did confirm that Falcon was in Biloxi, this defense theory would have been undermined.

Similarly, the only support for Austin's claim that Falcon tried to contact him to take a plea was Austin himself.  Austin's counsel used her questions to Falcon to leave the jury with the impression that the conversations actually happened, in a further effort to demonstrate's Falcon's bad faith motive in talking with detectives.  It is within the ambit of sound trial strategy not to search for telephone records which may not have established that any such calls or conversations occurred.  The records may only have confirmed what Falcon stated in his testimony.  While Falcon denied asking Austin to take a plea on the charges, he confirmed that he had spoken to Austin before trial.  If counsel had obtained the telephone records, the records would only have shown that Falcon spoke to Austin and not proved the content of the call.  In either scenario, his counsel's decision to avoid obtaining and presenting evidence that could have bolstered rather than countered the State's evidence was a sound strategic decision.  Williams v.

---

[89]See, e.g., Id., at pp. 841-42, 844-45 (Detective Dewhirst).

[90]Id., at p. 845 (Detective Dewhirst).

Cockrell, 31 F. App'x 832 (5th Cir. 2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)) ("'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'").  Austin has not established that his counsel was ineffective for failing to obtain these telephone records.

The state courts' denial of relief was not contrary to or an unreasonable application of Strickland.  Austin is not entitled to relief on this issue.

(5)    Move for Mistrial Related to Fingerprint Evidence

Austin asserts that his counsel was ineffective when she failed to move for a mistrial after she "opened the door" for Deputy Giovanni Tarullo to mention a fingerprint that was found in Suhor's vehicle and which had already been ruled inadmissible at trial.

The record reflects that, before the first trial, Austin's counsel filed a motion in limine to exclude from evidence any testimony regarding Austin's fingerprint obtained from the interior of the window of Suhor's Lexus.[91]  The motion was filed to memorialize the State's prior indication that it would not seek to introduce the fingerprint evidence.[92] The State acknowledged that it had agreed not to introduce the fingerprint report, despite the fact that Austin referenced the fingerprint during a recorded telephone call, which the

---

[91]St. Rec. Vol. 2 of 10, Trial Transcript, pp. 207-08, 7/11/11.

[92]Id., at p. 208.

State planned to use at trial.[93]  The state trial court did not verbalize or otherwise indicate its ruling on that motion in limine, although the court specifically ruled on three other defense motions brought that day.  Before the second trial, Austin's counsel moved again to exclude the fingerprint evidence, and the State again stated that it did not intend to use the fingerprint evidence.[94]  The record does not contain a ruling by the state trial court that deemed the fingerprint report inadmissible.  Instead, it was upon agreement of counsel that the fingerprint evidence would not be introduced.

During the second trial, Austin's counsel questioned Deputy Tarullo about the evidence found in Suhor's Lexus:[95]

> Q.    Now isn't it true, Detective -- excuse me -- Officer, that with the exception of this pill bottle with Joseph Austin's name, there's nothing else in this car connecting Joseph Austin to the vehicle?
>
> A.    There was.
>
> Q.    What was that?
>
> A.    A fingerprint.
>
> Q.    What fingerprint is that, Detective?

After asking that question and before the deputy could answer, Austin's counsel asked to approach the bench.  The state trial court excused the jury and allowed the

---

[93]Id.

[94]St. Rec. Vol. 4 of 10, Trial Transcript, pp. 567-68, 7/25/11.

[95]St. Rec. Vol. 5 of 10, Trial Transcript, p. 750, 7/26/11.

attorneys to discuss and argue how to address the statement about the fingerprint.[96]

Austin's counsel argued that the State should have advised the deputy to not mention the fingerprint evidence since it was to be excluded from trial. The State argued that Austin's counsel should have avoided that area of questioning to assure the deputy did not mention the fingerprint. Both defense counsel and the State asked the court either to hold a <u>Daubert</u> hearing before proceeding to determine the validity of the fingerprint identification and/or admonish the jury to disregard the statement to avoid upsetting the trial. The court then admonished the jury to disregard the deputy's statement regarding the fingerprint.[97]

Under Louisiana law, a mistrial is available when a remark or comment falls directly or indirectly into one of four categories: "(1) Race, religion, color or national origin, if the remark or comment is not material and relevant and might create prejudice against the defendant in the mind of the jury; (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible; (3) The failure of the defendant to testify in his own defense; or (4) The refusal of the judge to direct a verdict." La. Code crim. P. art. 770. When a witness's remark or comment falls outside of these categories, the State or the defense may request that the court admonish the jury to disregard it. La. Code Crim. P. art. 771. In the latter case, a mistrial may be

---

[96]<u>Id</u>., at pp. 751-57.

[97]<u>Id</u>., at p. 757.

granted only if the court is satisfied that an admonition is insufficient to assure a fair trial. Id.

The answer by Deputy Tarullo did not fall within the categories of comments requiring a mistrial, and did not compel a motion for mistrial by Austin's counsel. Counsel was not deficient in failing to move for a mistrial when Louisiana law did not support such a motion.  See Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

Instead, Austin's counsel acted reasonably in moving for admonishment in accordance with Louisiana law.  Austin has not shown that the admonishment was insufficient to insure a fair trial.  The trial transcript contains repeated testimony and reference to the fact that Austin had a key to Suhor's car and drove Suhor's car regularly, including the evening before the car burglaries.  The jury would not have been tainted by exposure to the fact that his fingerprints were in the car.  Austin has not shown any prejudicial consequence from the fact that the fingerprint was mentioned, especially when the jury was admonished to disregard it.  The denial of relief on this issue was not contrary to or an unreasonable application of Strickland.  Austin is not entitled to relief on this issue.

(6)    Protect His Right to Confront Celeste Geiger

Austin argues that his counsel erred in questioning Detective Dewhirst about the identification information provided to police by Celeste Geiger.  He contends that this information was prejudicial hearsay and gave the State the opportunity to argue that Austin fit the general description given by Geiger without the defense having the chance to investigate or question Geiger directly.

The record reflects that Austin's counsel elicited testimony from Detective Dewhirst that he had no evidence or eyewitness statements placing Austin in Suhor's vehicle at the time of the car burglaries.[98]  Austin's counsel also asked the detective if Celeste Geiger had identified Austin, and the detective replied that she had not.[99]  When the detective explained his answer, he mentioned that Geiger had only indicated that she saw two white males about 5'8" or 5'10" flee from the Lexus.[100]

Austin's counsel used this information to challenge the detective's theory that Austin and Falcon were the two men Geiger saw based on that description.  As counsel attempted to show through her questions, Falcon was a much taller and heavier man then Geiger had described, so that she could argue it was not reasonable for the detectives to seek out Austin and Falcon based on her description.[101]  Austin has not established that

---

[98]St. Rec. Vol. 5 of 10, Trial Transcript, pp. 835-37, 7/26/11.

[99]Id., at pp. 847-48.

[100]Id., at p. 848.

[101]Id., at pp. 848-49.

counsel's strategy in this regard was ineffective assistance or that counsel could anticipate that the officer would expand the answer to her question as he did.

The detective's testimony about Geiger's statements was neither hearsay nor a violation of Austin's confrontation rights. An out-of-court statement is not hearsay when offered to explain why an officer conducted an investigation in a certain way. United States v. Brown, 560 F.3d 754, 764 (8th Cir. 2009). Thus, such statements are non-testimonial and do not implicate the Confrontation Clause, "when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." Davis, 547 U.S. at 822.

Geiger gave a general description of the two white males to officers when she called to report the incident and in her statement to Detective Dewhirst while the initial incident was still unfolding. The officers used this and information obtained from other sources to treat Austin and Falcon as suspects. The trial testimony merely explained why Detective Dewhirst thought Geiger's description was consistent with Austin's appearance. Austin's counsel attempted to challenge this in an effort to establish inconsistencies in the investigation and alleged lack of direct evidence against Austin. This was reasonable trial strategy under the circumstances of the case.

Austin therefore has not identified any deficiency in counsel's performance or prejudice resulting from her choice of questions and trial strategy. The denial of relief

on this issue was not contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief on this issue.

(7)    Object to Prejudicial Remarks by the Prosecution During Closing Argument

Austin alleges that his counsel failed to object to prejudicial remarks made by the prosecutor.  He suggests that his counsel should have objected when the prosecutor declared him guilty, called him a criminal and otherwise over-emphasized the unsupported identification evidence from Geiger.  However, it is well settled that the State may permissibly argue to the jury the "inferences and conclusions" that it should draw from the evidence, so long as the assertions are based on the evidence.  United States v. Delgado, 672 F.3d 320, 336 (5th Cir. 2012) (citations omitted).  "Moreover, 'unflattering characterizations of a defendant will not provoke a reversal when such descriptions are supported by the evidence.'"  Delgado, 672 U.S. at 336 (quoting United States v. Windom, 510 F.2d 989, 994 (5th Cir. 1975) (finding no error in a prosecutor's reference to a defendant as a "con artist")).

The record reflects that the challenged comments by the prosecutor were appropriate and based on the evidence already before the jury.  The jury heard evidence that tended to prove Austin was guilty, and the State certainly was entitled to argue to the jury that the evidence was sufficient to prove his guilt.  While the prosecutor described the relationship between Austin and the other players, Falcon, Suhor, etc., as "thick as thieves," use of that phrase was supported by the evidence.  The remaining general

comments challenged by Austin concern evidence tending to establish Austin's role in the car burglaries. Based on the particular statements challenged by Austin, his trial counsel had no basis to object to the State's closing arguments. Counsel is not ineffective for failing to lodge a meritless objection. See Clark, 673 F.3d at 429 ("failure to assert a meritless objection cannot be grounds for a finding of deficient performance") (quoting Emery v. Johnson, 139 F.3d 191, 198 (5th Cir. 1997); Wood v. Quarterman, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994)); Green, 160 F.3d at 1037 (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

Austin has not established that the state courts' denial of relief was contrary to or an unreasonable application of Strickland. He is not entitled to relief on this claim.

(8)    Discuss the Sentencing Options with Austin

Austin asserts that he did not receive a copy of the presentence report and that his counsel did not discuss it with him. He argued in the state courts that his counsel erred by requesting that the court sentence him to six years on each count, although this was less than the eight years per count sought by the State. He also claimed that his counsel told him that the maximum prison sentence he faced was 24 years. Contradictorily, he also claimed that on the day of sentencing, his counsel advised him that he faced a

maximum of 98 years in prison,[102] which is inconsistent with his claim that counsel told him the sentences could not be made consecutive.[103]  He asserts that had he known the full sentencing exposure, he could have prepared character witnesses to testify.

Austin was present at the sentencing hearing, during which the presentence report was discussed and the multiple bill was adjudicated, resulting in a finding that he was a second felony offender.[104]  Austin's counsel, the prosecutor and the state trial court discussed in detail the sentencing range to which he was exposed as a first and second felony offender.[105]

As discussed at the sentencing hearing and previously in this report, as a second felony offender Austin faced a sentence range of six years to 24 years in prison on each count.  La. Rev. Stat. § 14:62(B); La. Rev. Stat. § 15:529.1(A)(1).  This is absolutely consistent with the information Austin admits was provided to him by his counsel.  While his counsel argued that the sentences should be concurrent, both the presentence report and the State argued for consecutive terms, which was within the discretion of the state trial court.  Austin concedes that he was told by his counsel that he faced a possible

---

[102]St. Rec. Vol. 7 of 10, Application for Post-Conviction Relief, 4/14/14.

[103]Consecutive sentences of 24 years on each of the four counts would have exposed Austin to 9<u>6</u> years.

[104]St. Rec. Vol. 6 of 10, Sentencing Transcript, 9/14/11.

[105]<u>Id</u>., at pp. 1083-85.

prison sentence of 24 years and as much as 98 years. He has not shown a deficiency in the advice of his counsel or in her handling of the sentencing proceedings.

Austin's counsel adequately challenged the fourth offender multiple bill, having his exposure reduced to that of only a second offender. She also was able to secure a minimum sentence on each count, although the aggregate consecutive term was 24 years. He can show no prejudice as a result of his counsel's performance. Austin simply has failed to establish that his counsel provided ineffective assistance under the circumstances of his sentencing. The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law. He is not entitled to relief on this claim.

(9)   Obtain Falcon's Phone Records of July 24 - 25, 2009

Falcon asserts that his counsel should have sought and obtained copies of Falcon's phone records around the time of the burglaries to establish that Falcon was possibly involved in other car burglaries and/or was not in Biloxi on the evening before the car burglaries. In this instance, the record demonstrates that counsel chose not to determine whether Falcon was actually in Biloxi and used the lack of corroborating evidence to the advantage of the defense. As discussed above, Austin's counsel used the late timing of Falcon's statement to police and the detectives' failure to pursue corroborating evidence

to support the defense's theory that Falcon fabricated his story.[106]  Austin's counsel specifically relied on the detectives' failure to obtain Falcon's phone records or question other people about the alleged trip to Biloxi in an effort to establish the unreliability of Falcon's statement and the lack of evidence against Austin.[107]

Counsel's decision not to introduce Falcon's telephone records was sound trial strategy.  If those phone records could and did confirm that Falcon was in Biloxi, the defense's theory would have failed.  Counsel's decision to avoid obtaining and presenting evidence that could have bolstered rather than countered the State's evidence was a sound strategic decision.  Williams v. Cockrell, 31 F. App'x at 832.

The state courts' denial of relief on this claim and all of Austin's arguments of ineffective assistance of counsel was not contrary to or an unreasonable application of Strickland.  Austin is not entitled to relief on this claim or any facet of his ineffective assistance of counsel issue.

## XII.    NEWLY DISCOVERED IMPEACHMENT EVIDENCE (CLAIM NO. 7)

Austin claims that there is newly discovered evidence which would establish that Errol Falcon Jr. accused him of crimes that Falcon committed himself and to which Falcon pleaded guilty.  His arguments, broadly construed, are that Falcon's motions for return of seized property filed after Falcon's sentencing on the related charges amounts

---

[106]See, e.g., Id., at pp. 841-42, 844-45 (Detective Dewhirst).

[107]Id., at p. 845 (Detective Dewhirst).

to new evidence of Falcon's guilt.  Austin contends that, had the State notified his counsel of this information as required under Brady v. Maryland, 373 U.S. 83 (1963), she could have impeached Falcon and altered the outcome of the trial.

The Brady materiality determination is a mixed question of law and fact.  Cobb v. Thaler, 682 F.3d 364, 377 (5th Cir. 2012).  Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

In Brady, the United States Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  Brady, 373 U.S. at 87.  The duty to disclose this kind of evidence exists even though there has been no request by the defendant.  Strickler v. Greene, 527 U.S. 263, 280 (1999) (citing United States v. Agurs, 427 U.S. 97, 107 (1976)); Hall v. Thaler, 504 F. App'x 269, 273 (5th Cir. 2012) (citing Kyles v. Whitley, 514 U.S. 419, 433 (1995)).  The prosecution's duty to disclose includes both exculpatory and impeachment evidence.  Strickler, 527 U.S. at 280 (citing United States v. Bagley, 473 U.S. 667, 676 (1985)); United States v. Valas, 822 F.3d 228, 236-37 (5th Cir. 2016).  Brady claims involve "the discovery, after trial of information which had been known to the prosecution but unknown to the defense."  Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994) (quoting Agurs, 427 U.S. at 103) (emphasis added); accord Reed v.

Stephens, 739 F.3d 753, 783 (5th Cir. 2014). To prove a Brady violation, a defendant must establish that the evidence is favorable to the accused as exculpatory or impeachment, that the evidence was suppressed by the State, and that prejudice resulted from the non-disclosure. Banks v. Dretke, 540 U.S. 668, 691 (2004) (citing Strickler, 527 U.S. at 281-82); Reed, 739 F.3d at 782.

Austin has identified no new evidence or any withheld evidence related to Falcon's possible possession of stolen items. The record shows, and Austin's counsel clearly knew before trial, that Errol Falcon Jr. entered guilty pleas to nine counts of possession of stolen property.[108] The record also shows, and Austin's counsel clearly knew before trial, that Falcon had been charged with the same car burglaries as Austin and that those charges were dismissed in return for his cooperation.[109] The fact that Falcon was involved in the other burglaries is not new.

In addition, during Falcon's cross-examination, the State, Austin's counsel and the state trial court had a brief discussion about Falcon's December 2009 statement, noting that it mentioned that some of the items stolen in burglaries by Austin were taken to Falcon's house.[110] This confirms that Falcon's statement and his involvement in the

---

[108]St. Rec. Vol. 6 of 10, Trial Transcript, p. 862 (Falcon), 7/26/11; see also, St. Rec. Vol. 4 of 10, Trial Transcript, pp. 495-96 (Falcon), 7/12/11.

[109]Id., at pp. 864-65, 872, 877 (Falcon); see also, St. Rec. Vol. 4 of 10, Trial Transcript, p. 496 (Falcon), 7/12/11.

[110]Id., at pp. 889-90.

crimes was known to all at trial.  The December 2009 statement is the same statement Austin now references in this claim as "new evidence."[111]  The relevant information about the location of some stolen items from various burglaries by Austin is not new.  No showing has been made that it was withheld from, or actually favorable to, the defense, especially since the statement implicates Austin in multiple burglaries.

In addition, the state trial court's judgment related to Falcon's motion for return of property, also referenced by Austin, reflects that Falcon was attempting to regain possession of certain items seized from his home by police which belonged to his family.[112]  The property had apparently been seized during the investigation of numerous burglaries by Austin and Falcon and had not been claimed by victims or identified as stolen.[113]  None of this is new information.

Austin's claim is factually erroneous and legally meritless under the <u>Brady</u> standards.  The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this issue.

## XIII.   OTHER BRADY EVIDENCE (CLAIM NOS. 8 AND 10(a))

Austin claims that the State engaged in misconduct when it withheld other <u>Brady</u> evidence, specifically a phone call between Errol Falcon Jr. and his girlfriend, Danielle

---

[111]<u>See</u> Rec. Doc. No. 3-1, p. 20; St. Rec. Vol. 7 of 10, Application for Post-Conviction Relief, Exhibit A, 4/14/14.

[112]St. Rec. Vol. 7 of 10, Application for Post-Conviction Relief, Exhibit A, 4/14/14.

[113]<u>Id</u>.

Kiem. Austin claims that, during this call, Falcon tried to arrange for Kiem to perform sexual favors for the St. Charles Parish District Attorney Harry Morel in return for plea deals.

I have outlined the Supreme Court's standards for review of a <u>Brady</u> claim in the previous section of this report. In sum, to prove a <u>Brady</u> violation, a defendant must establish that the evidence is favorable to the accused as exculpatory or impeachment, <u>that the evidence was suppressed by the State</u>, and that prejudice resulted from the non-disclosure. <u>Banks</u>, 540 U.S. at 691; <u>Reed</u>, 739 F.3d at 782. Even assuming that Austin's claims are true, he has failed to establish that the State or any of its agents were in possession of Falcon's phone records or recordings of his calls before or during Austin's trial. His argument is speculative and conclusory as to when any such conversation became known to the detectives.

Austin also has failed to establish that the phone conversation between Falcon and Kiem would have had any bearing on Austin's innocence that might constitute exculpatory <u>Brady</u> evidence. Austin makes no suggestion that any information conveyed in the conversation had anything to do with Austin's innocence of the car burglaries of which he was found guilty.

Austin has not alleged or provided any proof that the content of the alleged phone call would have established that Falcon's statements about Austin were false or that Falcon wanted Austin to plead guilty to help Falcon get a lower sentence. Even

assuming a phone call unrelated to Austin would have been admissible against Falcon as impeachment evidence, the information would have been cumulative of the impeachment evidence already in the possession of the defense and already used by the defense at trial in an effort to show that Falcon had selfish motives in making the statement against Austin.  He therefore has not established that any failure to provide the phone call to the defense was prejudicial.

The denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this issue.

## XIV.   OTHER PROSECUTORIAL MISCONDUCT (CLAIM NO. 10(b)&(c))

Austin claims that he was convicted as the result of prosecutorial misconduct when the State knowingly gave the state trial court fraudulent information that it gave Falcon immunity and by causing the mistrial, compelled Falcon to testify and allowed him to do so falsely without correcting it and targeted Austin for exercising his constitutional right not to accept a plea deal.

When a due process violation is grounded in alleged prosecutorial misconduct, the habeas petitioner must demonstrate that "the misconduct is persistent and pronounced or that the evidence of guilt was so insubstantial that the conviction would not have occurred" but for the alleged misconduct.  Jones v. Butler, 864 F.2d 348, 356 (5th Cir. 1988).  Thus, federal habeas corpus relief is not available unless the alleged misconduct

so infected the trial with unfairness that it denied the defendant due process.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).

A claim of prosecutorial misconduct presents a mixed question of law and fact. Brazley v. Cain, 35 F. App'x 390, 2002 WL 760471, at *4 n.4 (5th Cir. Apr. 16, 2002) (citing United States v. Emueqbunam, 268 F.3d 377, 403-04 (6th Cir. 2001); Jones v. Gibson, 206 F.3d 946, 958 (10th Cir. 2000); United States v. Noriega, 117 F.3d 1206, 1218 (11th Cir. 1997); United States v. Spillone, 879 F.2d 514, 520 (9th Cir. 1989)). This court must determine whether the state courts' rulings were contrary to or an unreasonable application of federal law.

The circumstances of the mistrial on July 12, 2011, are discussed above.  The circumstances of the first trial beyond that discussion have no bearing on the validity of Austin's convictions because he was properly and fairly tried in a second trial July 25-27, 2011.  Any other broad allegation of prosecutorial misconduct related to having Falcon testify at the first trial is irrelevant to the propriety of the second trial.

I reiterate that the state trial and appellate courts concluded that the State had not acted in bad faith in pursuing or presenting Falcon's testimony at the first trial.  These findings are supported by the record and must be given deference by this court.  The State called Falcon to testify at the first trial after Falcon approached the police to offer

information about the burglaries and Suhor's abandoned car.[114]  Falcon waived his right

to counsel before speaking to the officers.[115]  At the time, Falcon had already entered

guilty pleas to nine counts of possession of stolen goods and was awaiting sentencing on

an agreed sentence of 20 years.[116]  The State also dismissed the five simple burglary of

a vehicle counts against him (the same counts faced by Austin) and agreed not to use his

statements or testimony to bring new charges against him.[117]  Because he had already

pleaded and was given immunity, the State did not notify Falcon's counsel that he was

being called to testify.  This decision eventually led to disruption during Falcon's

testimony on July 12, 2011, and Falcon decided not to continue his testimony on the

advice of counsel.[118]

During a hearing on the motion to quash the second trial, Austin's counsel argued

that the mistrial barred a second trial under the Double Jeopardy protections.[119]  The state

trial court denied the motion, apparently rejecting Austin's contentions that the State

acted with gross negligence or intentionally in calling Falcon without notifying his

---

[114]St. Rec. Vol. 4 of 10, Trial Transcript, p. 510, 7/12/11.

[115]Id., at p. 514.

[116]Id., at pp. 502, 508.

[117]Id., at pp. 502, 510-11, 515.

[118]Id., at pp. 501-505, 507-08, 518-19.

[119]St. Rec. Vol. 4 of 10, Hearing Transcript, pp. 550-51, 7/20/11.

counsel.[120]  On direct appeal, the Louisiana Fifth Circuit found that "the record belies defendant's assertion that the State intentionally acted to provoke his motion for mistrial."[121]  The court found that the State acted in good faith because Falcon was proceeding under the grant of immunity and dismissal of the simple burglary charges against him.  The court also concluded that, even if the State acted negligently in failing to contact Falcon's attorney, mere negligence was not prosecutorial misconduct sufficient to bar a second prosecution.  As discussed above, the record supports the state courts' findings that the prosecution did not engage in intentional misconduct in calling Falcon to testify.  The record supports the state courts' findings that the State acted inadvertently or perhaps negligently in failing to confer with Falcon's counsel before calling him to the stand.

The State also called Falcon to testify at Austin's second trial.  This time, the State conferred with Falcon's counsel before trial and Falcon was actually sentenced to 20 years in prison before he took the stand.  Because there was some concern that Falcon may not honor his prior agreement to testify and had already had the burglary charges against him dismissed, the State took the precaution of filing a motion to compel him to testify.[122]  The state trial court advised Falcon that he could be compelled to testify under

---

[120]Id., at p. 555.

[121]Austin, 113 So.3d at 306; St. Rec. Vol. 8 of 10, 5th Cir. Opinion, 12-KA-629, 3/13/13.

[122]St. Rec. Vol. 4 of 10, Hearing Transcript, pp. 544-547, 7/20/11.

threat of contempt in accordance with state law.[123]  The court also appointed Falcon

counsel with whom he could confer about his testimony.[124]

Based on this record, Austin has not established that the State engaged in

misconduct in obtaining or compelling Falcon's testimony.  The State did not violate

Austin's right to a fair trial simply because Falcon was a witness adverse to Austin's

defense.  The state courts' denial of relief on this issue was not contrary to or an

unreasonable application of Supreme Court law.

Austin also contends that the State knowingly allowed Falcon to testify falsely in

violation of his due process rights.  This claim is entirely conclusory.  The State denies

a criminal defendant due process when it knowingly uses perjured testimony at trial or

allows untrue testimony to go uncorrected.  Giglio v. United States, 405 U.S. 150 (1972);

Napue v. Illinois, 360 U.S. 264 (1959); Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir.

1996).  To obtain relief, however, the petitioner must show that (1) the testimony was

actually false, (2) the State knew it was false, and (3) the testimony was material.

Duncan v. Cockrell, No. 02-20901, 2003 WL 21545926, at*3 (5th Cir. July 3, 2003);

Kirkpatrick v. Whitley, 992 F.2d 491, 497 (5th Cir. 1993).  False evidence is "material"

only if there is any reasonable likelihood that it could have affected the jury's verdict.

Duncan, 2003 WL 21545926, at*3 (citing Nobles, 127 F.3d at 415).

---

[123]Id., at pp. 547, 550.

[124]Id., at pp. 548-49.

Austin has not established that any particular statement made by Falcon actually was false.  His argument is based on his mere conclusion that the testimony was false because he disagrees with Falcon's testimony and contends that it was not corroborated by physical evidence and/or conflicted with other testimony.  The mere existence of a conflict in testimony and evidence does not make it false or perjured.  See United States v. Wall, 389 F.3d 457, 473 (5th Cir. 2004), cert. denied, 544 U.S. 978 (2005) ("Wall has not established that McDowell's testimony was actually false.  He has merely shown that Ristau's testimony would establish a conflict in the testimony, a far cry from showing that it was 'actually false.'").  The evidence in this case presents nothing more than the kind of credibility conflict and dispute over the appropriate weight to be afforded to it that frequently occurs at trial and which is the jury's function to resolve.

Austin has fallen far short of establishing that Falcon's testimony was false or that the State engaged in prosecutorial misconduct to deny him a fair trial.  He has not shown that the denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this issue.

Austin also claims that the State targeted him because he declined to accept a plea offer, which he claims was the same as the plea offer made to Falcon.  He suggests that the prosecutor's decision to pursue the charges against him and rely on Falcon's uncorroborated testimony at trial in some way was retaliation for the exercise of his right to remain silent by rejecting the plea offer.

When a prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute generally rests entirely in his discretion.  <u>Bordenkircher v. Hayes</u>, 434 U.S. 357, 364 (1978).  The plea bargaining process is a fundamental part of the criminal justice system which flows from the mutuality of advantage between defendants and prosecutors, each with his own reason for wanting to avoid trial.  <u>Id.</u>, 434 U.S. at 361 &363 (1978) (quoting <u>Brady v. United States</u>, 397 U.S. 742, 752 (1970)).  While confronting a defendant with the risk of a more severe punishment if a plea bargain is rejected may have a discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices is inevitable and permissible.  <u>Bordenkircher</u>, 434 U.S. at 364 (holding that by tolerating and encouraging the negotiation of pleas, the court has necessarily accepted as constitutionally legitimate the reality that the prosecutor's interest at the bargaining table is to persuade a defendant to forgo his right to plead not guilty).

The fact that the State continues to pursue charges after a plea offer is rejected does not amount to prosecutorial misconduct or vindictive prosecution.  <u>See</u> <u>United States v. Ward</u>, 757 F.2d 616, 620 (5th Cir. 1985) (to be vindictive, the State's actions must exceed the mere motive to prosecute the crime committed); <u>see also</u>, <u>United States v. Molina</u>, 530 F.3d 326, 332 (5th Cir. 2008) (citing <u>United States v. Batchelder</u>, 442 U.S. 114 (1979)) (Prosecutors generally have discretion to decide who to prosecute, which offense to charge, and what measure of punishment to seek).  Instead, a vindictive

prosecution is one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right in violation of a defendant's Fifth Amendment right to due process.  United States v. Goodwin, 457 U.S. 368, 372 (1982); Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998); Ward, 757 F.2d at 619-20.  To establish vindictive prosecution, a defendant must prove either actual vindictiveness or demonstrate circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness.  Goodwin, 457 U.S. at 376.

In this case, Austin has failed to establish either direct or presumptive vindictiveness by the prosecution.  As an initial matter, he has not provided any evidentiary source to establish that the prosecution actually offered him a plea agreement. Even assuming there were such negotiations, Austin has not shown that the prosecution took any vindictive action against him after he rejected the offer.

Accepting his factual assertions as true, Austin had already been indicted by a grand jury and charged with nine counts of possession of stolen goods and five counts of simple burglary of a vehicle when the alleged plea offer was made.  The record reveals no action by the State to increase the charges against Austin at any time after the initial indictment.  Instead, the State actually dismissed the majority of those charges before trial.  As the record reflects, the State ultimately tried Austin on only four of the original counts of simple burglary of an automobile, and the State dismissed all nine counts of

possession of stolen goods <u>before</u> the <u>first</u> trial.[125]  These actions are not indicative of a prosecution tactic designed to punish Austin for rejecting a plea agreement.

Austin offers nothing other than wholly unsupported speculation that the State prosecuted his case for improper reasons.  Speculation is insufficient to establish prosecutorial misconduct or vindictive prosecution.  <u>See</u> <u>Conrad v. Cain</u>, No. 99-30008, 1999 WL 706107, at *1 (5th Cir. Aug.18, 1999) (citations omitted) ("In his attempt to establish vindictiveness, Conrad relies exclusively on conclusional statements. Accordingly, he has not carried his burden, by a preponderance of the evidence, that the prosecutor acted vindictively.").

Austin has failed to establish that the denial of relief on this issue, or any facet of his prosecutorial misconduct claim, was contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this issue.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Austin's Motion for Stay and Abeyance (Rec. Doc. No. 23) be **DENIED**.

It is further **RECOMMENDED** that Austin's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[125]St. Rec. Vol. 1 of 10, Trial Minutes, 7/26/11; St. Rec. Vol. 5 of 10, Trial Transcript, p. 721, 7/26/11; St. Rec. Vol. 1 of 10, Trial Minutes, 7/11/11.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[126]

New Orleans, Louisiana, this _____11th_____ day of April, 2017.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[126]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.